## Horan *v.* Strachan & Company.

1. Where the plaintiffs were called by the captain of a ship loaded and about to leave the port of Savannah, to take charge of it, extinguish a fire which had broken out aboard, and protect the cargo, and they agreed and proceeded to do so, they were entitled to continue in the performance of their part of the contract until its completion, and if discharged without cause, they were entitled to recover for the breach of the contract.

2. The evidence clearly shows that there was a custom to charge the custody commission and attendance fee, and that the captain knew it and contracted with reference to it; nor, considering the skill and experience required and the responsibility incurred in such employment, does the custom seem unreasonable.

   (a) The custom is not invalid because it does not fix the amount of the attendance fee for every case. If the custom is that it shall be a reasonable fee, the custom is reasonable.

3. The evidence showing that the plaintiffs made no disbursements for the vessel, but all the disbursements were made by others, and that the captain's attention was not called to the commission on disbursements, and it not appearing that he knew that the custom in the port required him to pay it, the finding of the same in favor of the plaintiffs was unwarranted.

   (a) Where a custom is universal or general, every person who makes a contract is presumed to know the custom, and it enters into the contract and binds him; but where it is a purely local custom, a resident of Europe who, so far as appears, has never been to the particular locality, is not bound unless he know of the custom.

   (b) Though the witnesses gave as their opinion that the person in charge of the ship would be entitled to the commission whether he furnished the money and made the disbursements or not, there

was no testimony of any instance where the agent had received these commissions when he had not furnished the money but the money was furnished by the owner. If the custom had been proved, it would not have been good and could not be enforced unless the plaintiffs further proved that they had the money and kept it for that particular purpose, or had made arrangements to procure it for that purpose and thereby incurred expense.

4. The letters of the defendant to the plaintiffs, and the surveys made in pursuance of the call of the British vice-consul, were not inadmissible because written and made after the revocation of the agency.

December 23, 1890.

Master and servant. Principal and agent. Contracts. Custom. Charge of court. Evidence. Verdict. Practice. Before Judge Harden. City court of Savannah. July term, 1890.

Reported in the decision.

George A. Mercer, for plaintiff in error.
Garrard & Meldrim, contra.

Simmons, Justice.

Strachan & Co. sued James Horan, the owner of the British steamship " Resolute," on an account, upon a bill of particulars attached to the declaration, the said account being made up of the charge of 2½ per cent. commission commonly known as "custody commission," upon the value of the cargo discharged, covering services rendered and work and labor done in and about the steamship "Resolute" in the port of Savannah, and also an attendance fee of $500, and also a commission on disbursements of the ship of 2½ per cent. thereon, the whole amounting to $4,975. There were other counts in the declaration for work and labor done, and also a quantum meruit. The defendant appeared and pleaded the general issue. It appears from the record in this case that about 5 o'clock in the morning, October 1st, 1887, the steamship "Resolute," then loaded with 5,003 bales of cotton, had cleared for sea; and while she was taking on coal preparatory for leaving

the harbor, a fire broke out aboard ship. The plaintiffs, who were then doing business in the city of Savannah as shipping merchants, were sent for by the master of the vessel, and Strachan, the senior member of the firm, responded, went aboard the vessel and reported to the master, and then and there the vessel and her cargo were put in charge of said firm just as vessels in distress are usually put in charge of merchants in that port. The testimony shows that after Strachan had superintended the discharge of the cargo from the ship for some two hours, they adjourned to the cabin to talk over the condition of affairs. The captain swore: "I asked Strachan if there would be any extra fees charged in connection with this matter. He replied a custody commission had always been paid in similar cases. I said I considered I required an agent, and if such was the charge I considered he deserved the preference, being my outward agent. He and I at the time never anticipated that the whole of the cargo would be discharged, but were in hope of extinguishing the fire in a very short time. I then found I required a wharf to land the cargo that was discharged, and requested Strachan to secure one on the most reasonable terms. Strachan & Co. continued to act as my agents until Monday afternoon, October 3d, 1887, when I received a telegram from Chubb, my owner's special agent, to the effect to withdraw the agency from Strachan & Co. unless they would waive their custody commission fee, etc." Strachan swore that he was employed by the master of the vessel early in the morning on the 1st of October, the ship being then flooded with water in attempting to extinguish the fire in the cargo, and that he immediately went to work to assist the captain in every way possible, and that when he went to the cabin and got breakfast he explained to the captain that by appointing him agent, there were certain cus-

tomary charges, such as custody commission of 2½ per cent. and attendance fee for managing this business, to accrue; and the captain said, "Very well, if it was the custom of the port he could not help it, and as Strachan was the agent of the ship before, it would be better for him to attend to the business than any one else." A great deal of other testimony was put in by the plaintiffs and the defendant under the *quantum meruit* count; also testimony going to show the custom of the port of Savannah as to the custody commission, attendance fee, and commission on disbursements. The testimony upon the last item will be given more fully hereafter in this opinion. The jury returned a verdict for the plaintiff, and the defendant made a motion for a new trial upon many grounds, which was overruled by the court; and the defendant excepted.

The main and controlling questions argued before us were, (1) did the captain of the vessel, under the instructions from Chubb the underwriter, approved by Horan the owner, have a legal right to discharge Strachan & Co. from his employment without sufficient cause; and (2) was Horan, the owner, bound by the custom of the port of Savannah in regard to custody commission, attendance fee and commission on disbursements?

1. As to the first question, it was contended by counsel for the plaintiff in error that Strachan & Co., being simply agents of the owner of the vessel, might be discharged at any time at the option of the principal or owner; in other words, that their agency could be revoked by the principal whenever he saw proper to do so, such agency not being coupled with an interest. While we admit this to be the general law as applied to agents who represent the principal in and about his business, we do not think it applies under the facts of this case. The employment of Strachan & Co., under

these facts, was something more than the appointment of an agent. It was more in the nature of an employment or hiring than an appointment to an agency. It was in the nature of a contract between the captain of the vessel, as the owner's agent, and Strachan & Co., whereby the latter agreed to extinguish the fire and if necessary unload the vessel of its cargo, and do any and everything else for the protection of the vessel and cargo. They were employed to do a particular thing, and were contractors, instead of agents in the general understanding of agency. Strachan & Co. therefore being contractors, servants or hirelings of Horan to do this particular job, Horan, in our opinion, could not rightfully discharge them without sufficient cause. If a man's house is on fire and he employs another to extinguish the fire and save the house, he cannot rightfully discharge the person employed for this purpose, unless there is sufficient cause. Or if he employs one to build him a house, or cut a ditch or make him a road, he cannot discharge him without sufficient cause. If he should do so, it would be a breach of the contract. Yet according to the contention of counsel for the plaintiff in error, under the particular facts of this case, all those persons would simply be the agents of the employer, and he could discharge them without a breach of his contract, and they would only be entitled to compensation for the services performed up to the time of the discharge. We cannot agree with counsel in this view of the law. When the steamship was found to be on fire and the captain sent for Strachan & Co. and requested them to take charge of the ship and extinguish the fire and protect the cargo, and Strachan & Co. agreed to do so, and accordingly proceeded to do so, in our opinion it was a contract between them, and Strachan & Co. were entitled to continue in the performance of their part of the contract until its comple-

tion ; and if they were discharged without cause it was a breach of the contract, and they would be entitled to recover; and the trial judge having taken this view of the case in his charge to the jury, there was no error in the charges given upon this subject, nor in his refusal to charge as requested by the defendant.

2. This brings us to the question, what were they entitled to recover ?   Strachan & Co. insist that under the custom of the port of Savannah, they were entitled to recover a custody commission of $2\frac{1}{2}$ per cent. on the value of the cargo discharged, a reasonable attendance fee on surveys and general supervision, and a commission of $2\frac{1}{2}$ per cent. on disbursements connected with the business of the ship in distress.   The plaintiff in error, Horan, insists (1) that there was no such custom in the port of Savannah, (2) that if there is such a custom, it is an unreasonable custom, and (3) that the captain of the vessel, the agent of the plaintiff in error, did not know of the custom.

As to the custody commission and attendance fee, and the knowledge of the captain in regard thereto, the evidence clearly shows that there was such a custom in Savannah, and that the captain knew it and contracted with reference to it.   It will be remembered, from the recital of facts above given, that when Strachan had been in charge of the vessel about two hours, he went down to the cabin to breakfast with the captain, and then informed him that "by appointing him (Strachan) agent, there were certain customary charges, such as custody commissions of $2\frac{1}{2}$ per cent., and attendance fee for managing this business, to accrue"; and the captain said, " Very well, if it was the custom of the port he could not help it"; and that as Strachan had been agent of the ship before, it would be better for him to attend to the business than any one else.   The captain does not deny this statement of Strachan, but what

he says goes to confirm it. It is therefore clear to our minds that the captain fully understood that there was a custom in Savannah, and the amount of the custody commission, and assented to the custom. As said before, we think the evidence clearly establishes that there was such a custom, as to custody commission and attendance fee; and taking into consideration the skill and experience required and the responsibility incurred in such employment, as shown by the evidence, we cannot say that the custom is an unreasonable one. It must require great skill to manage a vessel loaded with cotton, when on fire. If by negligence, or a mistake which a skilful person would not make, injury is sustained by the vessel or cargo, the person employed would be liable therefor; and in case of serious loss or injury the damages would be heavy. And we suppose that the custom fixed these fees in view of the risk and responsibility assumed by the person employed.

It was argued, however, by counsel for the plaintiff in error, as to the attendance fee, that it was unreasonable because the custom did not fix it in every case. There was no custom as to any certain amount, but it was left to the discretion of the person employed, and counsel claims that according to this custom, when the person employed fixes the amount, it is final. We think the evidence shows that although the custom did not fix the fee, it must be a reasonable fee. In our opinion, a custom is not invalid because it does not fix the amount of the fee for every case. If the custom is certain that it must be a reasonable attendance fee, that is sufficient. If custom had undertaken to fix the same fee for every case, it would not have been a good custom. The jury found $300 to be a reasonable attendance fee upon the steamship " Resolute," loaded with 5,003 bales of cotton. That would have been an unreasonable fee in the case of a small schooner loaded

with fish or oysters, or with ballast. If the custom is that it shall be a. reasonable fee, that is sufficient to render it a reasonable custom. Nor is the owner of the vessel absolutely bound by the fee fixed by the person employed. If it is unreasonable he can resist it, as the defendant did in this case, and the jury may reduce the amount to what the proof shows to be reasonable, as was done in this case.

3. It will be observed that in our discussion thus far, we have omitted the third item of the charges, to wit, two and a half per cent. commission on disbursements. On this subject the evidence discloses the fact that Strachan & Co. were discharged on the 4th of October, and that they did not make any disbursements for the vessel, and that all the disbursements were made by other parties. The evidence further discloses that in the conversation between Strachan and the captain of the vessel, when the latter asked as to the fees, Strachan did not mention this item, but only called attention to the custody commission and the attendance fee. There is no evidence going to show that the captain's attention was called to this item of expense, or that he knew that the custom in Savannah required him to pay it. The court therefore, we think, erred in charging the iury that "if they should find that at the time of making the contract of agency with plaintiffs, the custom of the port of Savannah claimed to exist was not known to the captain of the vessel, and that after that time he was notified of it and informed of it, and did not rescind at once, but allowed and ratified and confirmed the contract, then the jury would find necessarily that he knew it; but he would have had the right then to have said, '1 do not confirm the contract except provisionally; I will ascertain whether it will go'; and under the circumstances he would have had the right to have said, 'I claim I know nothing of this; I will

have to consult with my owners, and we will let it stand in abeyance until we find out, and then we will let it go on.' That would be right and that would be proper." This charge, under the facts of this case, may have been correct as to the custody commission and attendance fee; for, as we have seen, they were mentioned to the captain of the vessel; but it could not be correct as to the item under consideration, for the evidence shows that the captain was not informed of it, and therefore did not contract with reference to it. If the law is as seems to have been intimated by the court in this charge, that it was necessary, as to a purely local custom, for a stranger to the locality to have knowledge of it before he would be bound thereby, then it is quite certain that under the evidence the captain had no such knowledge. We are inclined to think that the trial judge took the correct view of the law on this subject. Where a custom is universal or general, every person who makes a contract is presumed to know the custom, and it enters into the contract and binds him; but we are inclined to think that where it is a purely local custom, like this, a person who resides in Europe, and who, so far as the evidence discloses, has never been to the particular locality before, is not bound, unless he has knowledge of the custom. Carter on Carriage by Sea, p. 184; Gabay v. Lloyd, 3 Barn. & Cress. 793; Hathesing v. Laing, L. R., 17 Eq. 92. See 1 Smith's Leading Cases, part 2, p. 962, American note to Wigglesworth v. Dallison, and cases cited.

Moreover, this part of the custom was not as well proved as was the custom in regard to the other items. None of the witnesses cite any instance where commissions on disbursements were charged and allowed to one who did not furnish the money. It is true that most of the witnesses gave it as their opinion that the person in charge of the ship would be entitled to the

commission whether he furnished the money and made the disbursements, or not; but custom is not a question of opinion, but of fact, and cannot be proved by the opinion of witnesses that it ought to be so and so; it must be proved that the custom exists—that it is a fact. The court and jury cannot act upon the opinion of the witnesses ; they must be guided by that which has been the practice, and no witness testified to any instance where the agent had received these commissions when he had not furnished the money, and the money was furnished by the owner. Read v. Rann, 10 Barn. & Cress. 439 ; 21 Eng. Com. L. Rep. 189 ; American notes to Wigglesworth v. Dallison, 1 Sm. Lead. Cas., part 2, 962, and authorities there cited.

Besides, we think if the custom had been proved, it would not have been a good custom and could not have been enforced by law, unless the plaintiff went further and proved that he had the money and kept it for that particular purpose, or had made arrangements to procure the money for that purpose, and thereby incurred expense. It seems to us it would be absurd to hold that a person is entitled to two and a half per cent. commission on disbursements which he never made and did not have the money to make and had made no arrangements to procure the money to make, and which disbursements were made by the owner of the vessel or some one else for him. We think, therefore, that the court erred in giving the charge above set forth, as to this particular item, and that the jury found contrary to law and the evidence in finding a verdict for this commission on money which the plaintiffs had not disbursed and which they had made no arrangements to disburse.

4. The court did not err in overruling the objections to the admissibility of the letters of Horan to the plaintiff, and the surveys made in pursuance of the call of

v 86-27

the British vice-consul at Savannah, upon the grounds taken therein and stated in the motion for a new trial, to wit, that the testimony was irrelevant because the letters were written and the surveys made after the revocation of the agency. The surveys, if otherwise unobjectionable (as to which we express no opinion), were not inadmissible on the ground taken in the objection.

The court having erred in its charge as to the commission on disbursements, and the jury having found $687.50 as commission on disbursements of $27,500.00 at 2½ per cent., we reverse the judgment of the court below in refusing a new trial upon this ground; but if the defendants in error will, within thirty days after this judgment is made the judgment of the court below, write off said sum of $687.50, then the judgment will stand affirmed.    *Judgment reversed, with direction.*