BURBRIDGE & HOUSTON *v.* S. GUMBEL & CO.

1. CUSTOM. *Evidence. Contract. Presumption.*

A custom in a business, existing among all those engaged therein in a certain city, is a general one, with reference to which it will, in the absence of rebutting evidence, be presumed that obligations touching the business are assumed.

2. SAME. *Insurance. Limiting instructions. Evidence.*

Where for a number of years a customer has shipped cotton to a factor, whose duty it is, in the absence of contrary instructions, to keep the cotton insured, it is admissible, in a suit against the factor for the value of uninsured cotton destroyed by fire, to prove a general custom among the factors in that market to apply an instruction not to insure only to the particular season in which it is given.

3. EVIDENCE.   *Application of instructions.   Case.*

 In such case, where the factor defends upon the ground that he was instructed not to insure cotton until further notice, it is admissible for him to prove that after such instruction was given, and before the cotton in question was destroyed, there was a settlement and discontinuance of business between the customer and himself, this being important in determining whether he was required to insure that cotton.

4. SAME.   *Unsworn pleadings.   Res inter alios.*

 One's unsworn pleading in another case is not evidence against him.

FROM the circuit court of the second district of Panola county. HON. EUGENE JOHNSON, Judge.

S. Gumbel & Co., commission merchants and cotton factors of New Orleans, La., sued Burbridge & Houston, merchants of Batesville, Miss., on a promissory note. Defendants pleaded as a set-off that plaintiffs were indebted to them for the value of 22 bales of cotton. To this plea plaintiffs replied admitting the receipt of the cotton, but averring their non-liability, upon the ground that it had been destroyed by fire, without any negligence or want of care on their part; that the cotton was not insured by reason of special instructions from the defendants not to insure. Defendants contended that it was the duty of Gumbel & Co. to keep the cotton insured against loss by fire, and that they were liable for its value. It was not denied that, ordinarily, it would be the duty of a cotton factor to insure cotton consigned to him unless he has instructions to the contrary. It was shown that defendants had been shipping cotton to plaintiffs for a number of years. On November 8, 1888, they wrote Gumbel & Co., on a postal card, as follows: "Do not ins. our cotton until instructed." No further instructions were ever given. The cotton in question was destroyed by fire April 3, 1892, and was not insured. During the cotton season of 1891-2 the defendants shipped to plaintiffs 141 bales of cotton. On this cotton no charge was made for insurance except for 48 bales, and there was evidence that the charge for

insurance on that was made through a clerical error, and that the accounts of sales for all the cotton were furnished the defendants, who made no objection to the failure to insure. Defendants offered to prove that it was the custom of cotton factors generally, and of those in New Orleans, to apply instructions as to insuring cotton only to the season in which such instructions were given. They also offered to prove that there was a suspension of their dealings with Gumbel & Co. during the cotton season of 1890-1, and a full settlement between the parties. The testimony on both points was, on objection of plaintiffs, excluded.

After the fire Gumbel & Co. brought suit against the Illinois Central Railroad Company to recover for certain cotton destroyed by the fire, including in this suit the cotton of the defendants, on the ground that the railroad company had negligently caused the fire. A certified transcript of the record in that suit was offered in evidence by defendants, but, on objection of plaintiffs, was excluded. A peremptory instruction was given for plaintiffs, verdict and judgment accordingly. Defendants appeal.

*Stone & Lowrey,* for appellants.

1. The evidence as to custom was competent. It was proposed to prove that, under the custom, instructions as to insurance were to be applied only to the cotton of the year in which they were given. If this was the general custom, and the custom of the New Orleans merchants, then Gumbel & Co. would be presumed to know it. The offer was to establish the custom by proof, and not to ask an opinion, hence, *Shackleford* v. *Railroad Co.*, 37 Miss., 202, is not in point. There is a distinction between a custom so universal as to have the effect of law, and the usage of a particular business, properly considered in construing a writing or contract made in that business. *Walls* v. *Bailey,* 10 Am. R., 407; 52 *Ib.*, 277; 59 *Ib.*, 211; 30 Am. Dec., 578; 37 *Ib.*, 718.

2. When the parties suspended their business relations and balanced their books, it was a termination of all instructions which they had observed in their past dealings. We submit, therefore, that it was error to exclude the evidence of the discontinuance of business in 1890.

3. It has been held that the statements contained in the pleadings in another case may be introduced to show that the suit was brought, and, for that purpose, we think the record in the suit against the railroad company was competent evidence.

*Wm. C. McLean*, for appellees.

In the absence of instructions, it is the duty of a factor to insure cotton consigned to him. Appellants admit that they gave an instruction not to insure, but undertake to show that it only applied to the cotton shipped during the year when given. The language was: "Do not insure our cotton until instructed." This meant that defendants desired to change the course of dealing, and to alter the general custom. There was no limit of time. Other instructions were never given, and Gumbel & Co. simply carried out the specific and unqualified order of the shippers.

It is a dangerous principle which would permit a custom to change a specific contract. Besides, the evidence does not show that the custom is certain, uniform or reasonable. Again, it must be shown that the custom was known to the parties. *Shackleford* v. *Railroad Co.*, 37 Miss., 202. See, also, 10 Wall., 390; 15 Gray, 85; 15 Am. Dec., 617.

Proof of a custom or usage is never admissible except where some ambiguity exists in the contract, and then is admitted only upon the idea that the custom will make plain that which is otherwise ambiguous. *Smith* v. *Clews*, 11 Am. St. R., 627.

Every presumption is to be indulged in favor of the correctness of the action of the lower court. It cannot be determined from the record that any witness proposed to testify, from his own knowledge, as to the existence of the alleged

custom.  Custom must be proved by evidence of facts, not by mere opinion.  1 Greenl. on Ev., § 252; 37 Miss., 202; 13 Am. St. R., 717; 22 *Ib.*, 477; 17 *Ib.*, 305.

The evidence shows that the defendants knew, during the season of 1891–2, that plaintiffs were not insuring their cotton. Having failed to object at that time, they are estopped.

*Boothe & Eckles,* on the same side.

Testimony of a suspension of business dealings between the parties in 1890 was properly excluded.  This was not a question material to the issue.  The relations between the parties had been resumed.

Appellants had ample notice that Gumbel & Co. were not insuring their cotton.  They were furnished, from time to time, with accounts of sales in which no insurance was charged. They should have complained then.  As they remained silent, they have no right to complain now that their cotton was not insured.

The court properly excluded the testimony as to the custom of cotton factors generally, and of New Orleans factors, as to the application of instructions concerning insurance to the particular season.  If such custom existed, it should have been pleaded.  Then it could have been denied, and this would have raised an issue of fact.  Gould's Pl., ch. 111, § 16, and authorities cited; 1 Chitty's Pl., 247–249; 50 Am. Dec., 95.

A usage of trade can only be invoked to aid the indeterminate intention of parties and the nature of contracts arising from implication and acts of an equivocal character.  See Bouvier's D. L., title Usage; 37 Miss., 202; 56 *Ib.*, 694; 23 Ill., 566; 36 Am. Dec., 42; 39 *Ib.*, 611; 2 Greenl. Ev., §§ 251, 252.

Appellants did not offer to prove that the custom in question was certain, uniform and reasonable, and known to both parties, and that they had acted upon it.  23 Ill., 566; 56 Miss., 694; 35 Am. Dec., 268; 45 *Ib.*, 76; 97 *Ib.*, 580.

Where the contract offered is free from ambiguity, evidence

of an alleged custom of trade to modify it is incompetent.    65 Am. Dec., 374; 68 *Ib.*, 145; 74 *Ib.*, 491; 83 *Ib.*, 656.

An agent with instructions is bound to regard them.    If he has no instructions, his duty will depend upon the intention and understanding of the parties, to be gathered from the circumstances of the case and the general usage in that kind of business.    1 Parsons on Con., 81; Story on Agency, § 199.

The suit brought by Gumbel & Co. against the railroad company cannot affect their liability in this case, and the evidence as to this was incompetent.

Argued orally by *P. H. Lowrey*, for appellant, and *J. B. Boothe*, for appellee.

WHITFIELD, J., delivered the opinion of the court.

The offer of the defendants was to show not only that it was the custom of the cotton factors in the New Orleans market, but also the custom of cotton factors generally, to apply instructions as to insuring cotton only to the season or cotton year in which such instructions were given.    It is said in *Horan* v. *Strachan*, 86 Ga., 408: "When a custom is general, every person who makes a contract is presumed to know the custom, and it enters into the contract and binds him; but, where it is a purely local custom," a stranger to the locality where it exists cannot be bound by it, unless knowledge of the custom is proven.    In *Walls* v. *Bailey*, 10 Am. Rep., 407, a case reviewing *Barnard* v. *Kellogg*, 10 Wall., 383, and *Dodge* v. *Favor*, 15 Gray, 82, cited by counsel for appellees, it is said: "It is for the jury, then, under proper instructions from the court, to take all the evidence in the case—that as to the existence, duration, and other characteristics of the custom or usage, and that as to the knowledge thereof by the parties—and therefrom to determine whether there is shown a custom of such age and character as that the presumption of law will arise that the parties knew of and contracted with reference to

it, or whether the usage is so local and particular as that knowledge in the party to be charged must be shown affirmatively or may be negatived.'' This the jury in this case was shut off from doing. See, to the same effect, *Sampson* v. *Gazzam*, 30 Am. Dec., 578, where the court says: '' Where a custom or usage is proved to exist in relation to a particular trade or pursuit, if it be general, all persons engaged therein are presumed to contract in reference to such usage.'' See, also, *Andrews* v. *Roach*, 37 Am. Dec., 718; *Mooney* v. *Insurance Co.*, 138 Mass., 375, and the authorities in note to *Smith* v. *Clews*, 11 Am. St. Rep., 627. The evidence must not be of opinions, as in *Shackelford's Case*, 37 Miss., 202, where the general doctrine is recognized and approved in the court's statement of the '' foundation of the whole doctrine of custom and usage,'' and in which case the mode of showing knowledge is not passed on, except as to opinions. In *Dodge's Case, supra*, it is stated (page 83) that '' they did not offer to prove by direct testimony that the plaintiff knew of this custom, but contended that they could satisfy the jury, on the evidence in the case, that he knew of it.'' This was allowed. It went to the jury. In *Barnard* v. *Kellogg, supra*, the point decided was that the rule of *caveat emptor* could not be annulled by proof of custom to the contrary, on the familiar principle that custom cannot be shown when it contravenes the law.

The testimony offered was to show, not a purely local custom, but a general one, and should have gone to the jury, under proper charges. Even if the offer had been to prove only the custom of the cotton factors in New Orleans, the testimony should have been received. Says Mr. Lawson, in his work on Customs and Usages (pages 40, 41, § 17): '' Knowledge of a usage is necessary in every case in order to bind a person by its terms. Sometimes this notice must be expressly proved, and sometimes from its generality and notoriety the law raises the presumption that it was known. It is, therefore, only as affecting the question of notice that the generality of the usage

becomes material. And as express notice is difficult to prove, because in the majority of cases nothing has been said by the parties in their negotiations about the usage, it is obvious that in the greatest number of instances it becomes absolutely necessary to prove such a usage as the law will presume the party intended to be bound by; and, consequently, in all these cases the generality of the custom becomes vital, and the rule that a usage must be general is applied by the courts with rigor. It becomes, therefore, of importance to determine what the courts understand by this rule. And, in the first place, it is settled that a usage may be 'general,' as this term is used here, notwithstanding that it is confined to a particular city, town, or village. It may be generally known in that city, town, or village, and be understood by all persons dealing there, and yet it may not exist in any place beyond. But the usage of a single house or of one person only is insufficient. . . A particular banking usage must apply to a place rather than to a particular bank. It must be the rule of all the banks in the place, or it cannot be a valid usage."

Again, in section 24, the author quotes approvingly from *Mayor, etc., of Pittsburg* v. *O'Neill,* 1 Pa. St., 343: "All trades have their usages, and, when a contract is made with a man about the business of his craft, it is framed on the basis of its usage, which becomes a part of it, except when its place is occupied by particular stipulations"—and refers to many instances, illustrative, where "the usage being proved, it was held not material that the proof did not show, in addition, that the party to be affected by it had express notice of it," but "it would be presumed" that they had notice. *Sewell* v. *Corp,* 1 Car. & P., 392; *Given* v. *Charron,* 15 Md., 502; *Lyon* v. *George,* 44 Md., 295.

In *Couch* v. *Coal Co.,* 46 Iowa, 17, the same doctrine is expressly stated, saying: "If it had been shown that operators of mines in this state, similarly situated, and using substantially the same kind of machinery, generally constructed cages with

bonnets, it could be reasonably presumed that defendant had knowledge of such custom," etc.   So, in section 18, Mr. Lawson says that, in the case of particular usages, knowledge "is to be shown by express proof or by evidence of their generality," using the word "generality" in the sense explained by him in section 17.   And he concludes (§ 24): "If a party closes his eyes and shuts his ears to what is universally known in his community by others, he will not be allowed to shelter himself under a plea of ignorance."

If, therefore, defendants could show the custom of the cotton factors of the New Orleans market to be as insisted, they should have been allowed to do so.   If they succeeded in showing such established, uniform, certain custom there, among other cotton factors in that market, a presumption would arise (under the authorities *supra* and the following cases, cited in note 1 to section 17, to wit: *Gleason* v. *Walsh*, 43 Me., 397; *Thompson* v. *Hamilton*, 12 Pick., 424; *Perkins* v. *Jordan*, 35 Me., 23; and *Clark* v. *Baker*, 11 Metc., [Mass.] 186) from a custom thus general in that market that the plaintiffs (themselves cotton factors in that market) knew of that custom, and contracted with reference to it—a presumption which plaintiffs might, if they could, rebut.   All the testimony touching such custom, in all its aspects, should have been submitted to the jury, the triers of the facts.   See, also, note to *Wigglesworth* v. *Dallison*, 1 Smith Lead. Cas., pt. 2, p. 920; *Adams* v. *Otterback*, 15 How. (U. S.), 539.

It was also error to have excluded the testimony as to the settlement and discontinuance of business between the parties at the close of the season of 1889–90.   This was one of the factors in determining the question as to whether plaintiffs were bound to insure this cotton.

It was not error to exclude the transcript of the record from the civil district court in New Orleans.   It is an unsworn pleading, and was not competent.

*The judgment is reversed.*