## 2642.   PHILLIPS *et al. v.* RISER.

There was no error in overruling the demurrer filed by the defendants, or in striking their plea.

DECIDED JANUARY 31, 1911.

Action upon guaranty; from city court of Tifton.—Judge R. Eve, April 9, 1910.

*Fulwood & Murray,* for plaintiff in error.

*George E. Simpson, Napier & Maynard,* contra.

RUSSELL, J.  E. F. Riser brought suit in the city court of Tifton against P. D. Phillips, J. J. L. Phillips, and C. W. Young, as guarantors. Young is a citizen of Tennessee and was not served with process. The defendants demurred to the petition, but the demurrers were overruled. The plaintiff then moved to strike the defendants' pleas, and, this motion being granted, the defendants have filed this writ of error to review these rulings. It appears from the petition that Riser purchased thirteen shares of stock in the Southwestern Brokerage & Investment Company, of Memphis, Tennessee, on May 8, 1908. Attached to the stock certificate evidencing his ownership of these shares was the following guaranty, which formed the basis of the suit: "This guarantee, attached to stock certificate No. 115 for thirteen shares of the capital stock of the Southwestern Brokerage & Investment Company, witnesseth, that whereas the undersigned, P. D. Phillips, Fender, Ga., J. J. L. Phillips, Tifton, Ga., and C. W. Young, Memphis, Tennessee, are largely interested in said corporation and the sale of its stock, now, therefore, it is understood and agreed by and between said parties and the owners of the shares of stock represented by said certificate that, should said owner desire to sell said stock after eighteen months from the date of the issuance of said certificate, said parties will, after eighteen months from said date, purchase the same, paying therefor the face value of the certificate, together with six per cent. interest per annum thereon from the date of issuance to the date of payment. Should said owner elect to avail himself of this guarantee, he must so notify in writing said parties of his election to do so, *giving them six months notice before the date he will ask repayment.* After two years from the date of issuance of said certificate this guarantee shall cease, and become null and void. Witness the hands of said parties, this 8th day of May, 1908. [Signed] P. D. Phillips, J. J. L. Phillips, C. W. Young."

The petitioner alleges, that being desirous of selling his stock, he notified each of the defendants on April 30, 1909, by mailing to each of them, from Woodford, Oklahoma, by registered mail, the following notices: "Dear Sir: In accordance with your agreement dated May 8th, 1908, in which you and others guaranteed the stock (13 shares) of the Southwestern Brokerage & Investment Company purchased by me, I hereby notify you that I desire to

sell same to you, and demand that six months after May 8th, 1909, you pay to me the face value of said stock, with 6% interest from the date thereof. Please inform me which bank you desire said stock sent to. Very respectfully, E. F. Riser." He avers that all of the defendants failed and refused to pay the sum of money agreed upon in the guaranty, although the stock has been tendered and payment demanded according to its terms. The certificate of stock is signed by P. D. Phillips, as president, and J. J. L. Phillips, as secretary, and it is alleged in the petition that a consideration moving the petitioner to make the purchase of the stock was a guaranty of these individuals, who were its executive officers. The defendants demurred to the petition, upon the ground that it failed to set forth a cause of action, and failed to disclose that the plaintiff had complied with the terms of the guaranty, and also upon the ground that the suit was prematurely brought. They demurred also upon the ground that the stock certificate was dated May 8, 1908, and that by the terms of the guaranty, the plaintiff was bound to hold the stock for eighteen months from May 8, 1908, before he could exercise his right to sell it to the defendants; also upon the ground that the petition failed to show that the plaintiff notified the defendants in writing of his election to sell the stock eighteen months after the date of the guaranty. A further demurrer attacked the petition upon the ground that the contract sued on was without consideration to support it, and was nothing more than an offer of the defendants to buy stock issued by a third party, to wit, the Southwestern Brokerage & Investment Company,—after a lapse of eighteen months from May 8, 1908, and that the contract, failing to bind the plaintiff to do anything, and not being signed by the plaintiff, is null and void. We think the court properly overruled each and all of these demurrers. We will consider them in reverse order, because the only question presented which is at all serious is raised by those grounds of demurrer which aver the contract to be unilateral and without consideration.

As to the plaintiff's signing the contract: if there was consideration moving to the guarantors, it is entirely immaterial whether the plaintiff signed the writing or not. It is not necessary for both parties to a contract to sign it, to prevent the contract from being unilateral; and a contract is sometimes unilateral if both parties do sign it. The demurrer which raised the point that the

contract of guaranty is without consideration is without merit. We do not think the guaranty in this case could be so construed, even if it were considered apart from the allegations of the petition in which it is incorporated; for it evidences that it is contemporaneous with the purchase of the stock, and it is a part of the transaction,—an option to buy back his stock, which was of value to Riser. If the guaranty had been made after Riser had already bought the stock, the point might be well taken. However, the idea that one whom it is sought to bind by a contract will receive a benefit is not essential in order to supply consideration. In some cases the question is (the party sought to be bound having already received consideration), will the opposite party lose a right he has purchased, and to which he is entitled upon his acceptance of conditions specified in the contract? The contract of guaranty in this case is attached to the certificate (in its face this fact is stated); it was contemporaneous with the purchase of the stock, and a part of it; and the fact that Riser parted with his money upon the promise of the guarantors to buy his stock merely amounts to the purchase on his part from the guarantors of an option to buy back his stock. The writing is an offer, under certain conditions, to buy Riser's stock, and nothing is required to complete the contract and make it an executed contract of sale except Riser's acceptance of the guarantors' offer to buy. When we consider that two of the guarantors were the president and the secretary, respectively, of the corporation whose stock they were selling Riser, and that he alleges he would not have bought but for the guaranty, there is no room to doubt that the defendants' financial interest in the corporation, and the advantage they were to derive from the successful sale of its shares, would supply such consideration as would validate the contract; and, as stated above, if there was consideration moving to the guarantors at the time that they made their offer to buy, and Riser accepted their offer, the contract would be complete. Outside of the distinct statement of the contract of guaranty, that the guarantors are largely interested in the Southwestern Brokerage & Investment Company, it follows, as a matter of course, that the president and the secretary of a corporation which is honestly administered have every interest in its success and in maintaining the market value of its stock, and even though the contract of guaranty, as contended by

·defendants in their demurrer, be nothing more than an offer to buy the stock, Riser's acceptance of the offer completes the contract.

The suit was not prematurely brought. The guaranty expressly provides that if the owner desires to sell the stock after eighteen months from the date of said certificate, the parties will, after eighteen months from said date purchase the same. It is true that a notice of six months in advance of the proposed sale is required, but the plaintiff gave the defendants such notice. He gave more than six months notice. If the construction suggested by one of the demurrers were placed upon the guaranty, the effect would be to absolutely destroy it; and if this was the original purpose of the phraseology employed, the contract would be an unconscionable fraud. We assume that the Southwestern Brokerage & Investment Company is a reputable concern, not intended to "break" those who buy its stock, nor to put the purchaser's money in a fictitious security, where the "investment" would be permanent because it was worthless and therefore unsaleable. It therefore could not have been intended that the holder of the guaranty, if he should desire to sell his stock, should not be able to *give the notice* until eighteen months had expired, when the effect of this would be to complete a term of two years, and that thus, upon the expiration of the six months prescribed in the notice, the guaranty itself would be null and void by express limitation. We can not imagine that the defendants had any such intention when making the guaranty. And yet it is possible for this to have been the effect upon the plaintiff if he had waited until eighteen months expired and had then given the notice, because there is no exception to the broad statement that at the end of two years the guaranty is void; and it is expressly stipulated that the requisite notice must be given full six months before payment can be exacted. Of course, the contention that the suit could not be brought until after May 8, 1910, is disposed of by the ruling just made; for if the certificate had to be held until November 8, 1909, had passed, the requisite notice could not be given, because the six months necessary to perfect it would not intervene. The time remaining in which the notice must be given would, at the very best, lack one day of being six months.

The fact that the plaintiff could not exercise his right to sell the certificate to the defendants until eighteen months had elapsed

does not warrant the conclusion that the holder of the certificate could not give notice of his intention to sell before that time had elapsed. As we construe the guaranty, the plaintiff was obliged to hold the certificate of stock for eighteen months, before he could require the guarantors to take it off his hands and refund his money; but at any time that he may have determined that he desired to sell his stock, he could give the notice, provided that the notice was not effective unless it was given at least six months before the expiration of the eighteen months or of the two years.

The defendants' plea was properly stricken; it stated no substantial defense. If the proposed plea (urging that the suit was prematurely brought for the reasons already referred to, and that the plaintiff could not sue until the expiration of six months after he had held the certificate for a term of eighteen months prior thereto) is not a plea in abatement, the judge nevertheless could properly have rejected it as an amendment, because it was not accompanied by the affidavit required by law (Acts 1897, p. 35).

*Judgment affirmed.*