### 3202.   RUSSELL v. CAMP.

1. Where an executory agreement for the future delivery of goods is entered into and there is no stipulation that the goods to be delivered shall be derived from a particular source, the legal effect of the agreement is for the delivery of any goods of that class and quantity, no matter from what source produced. But if the parties expressly stipulate that the goods shall be produced from a particular source, this stipulation is to be given effect.

2. Where parties enter into a contract whereby one agrees to sell and the other to buy a designated amount of cotton stated in the contract as being a portion of a particular crop then in existence, a condition is implied (unless the contrary is stated) that delivery of the specified amount is to be required only in the event the designated crop yields that amount.

3. Where an executory contract for the sale of cotton specifies that the cotton mentioned is a part of a crop in existence, and it turns out that by no fault of the seller the designated crop yields less than the number of bales stated, and the seller delivers all of the cotton produced from his crop, he discharges his contract, and is not liable in damages for failing to deliver the total number of bales stated in the contract.

DECIDED SEPTEMBER 11, 1911.

Complaint; from city court of Jefferson—Judge Stark. January 5, 1911.

*T. J. Shackelford, Lewis C. Russell,* for plaintiff in error.

*G. A. Johns,* contra.

POWELL, J. Camp sued Russell, alleging that during the summer of 1909 they made certain contracts by which Russell agreed to sell and deliver to Camp a designated number of bales of cotton at various times during the fall of that year; that he delivered only a portion of it and failed to deliver the remainder; and that the contract price was less than the market price; whereby the amount of damages sued for resulted to the plaintiff. The contracts were evidently written in the same printed form as that which is set out in full in the case of *Luke v. Livingston,* 9 *Ga. App.* 116 (70 S. E. 596), but the point made in that case, as to the illegality of the contract, is not here involved. The defendant in the present case admits the legality of the contracts and expressly sets up that, instead of their being speculative in their nature, they were intended to represent an actual sale of growing cotton which he then and there possessed. But, as he further pleads, when the cotton was gathered, the number of bales turned out to be less than the number designated in the contracts; and he delivered to the plaintiff all of his cotton with the exception of a few bales, as to which he has settled with the plaintiff. The court struck this defense, and this action of the court is the basis of the exception relied on in this court.

The case of *Forsyth Mfg. Co.* v. *Castlen,* 112 *Ga.* 199 (37 S. E. 485), settles many of the preliminary propositions involved in the case. In that case it is held: "An executory agreement for the sale of goods to be delivered at a future day is valid, though at the time the seller has not the goods in his possession, has not contracted to purchase them, and has no expectation of acquiring them otherwise than by producing, manufacturing, or purchasing them at some time before the day of delivery. Such a transaction is not rendered invalid by the provisions of section 3537 of the Civil Code [Civil Code (1910), § 4117], unless it is made to appear that neither of the parties contemplated an actual delivery of the goods, and that it was the intention of both that there should be no actual delivery, but that on the day fixed for delivery there should be a settlement of their differences, based on the market value of the goods on that day. In that event the transaction would be a pure speculation upon chances, but not otherwise. . . Although at the time an executory agreement for the future delivery of goods was entered into the seller intended to fulfill his contract by delivery

of goods produced by him, and this fact was known to the buyer, the seller would have a right to deliver, and the buyer would be bound to receive, any goods of the character and quality stipulated in the contract, when it was not agreed that the goods delivered must be produced by the seller. In determining whether an executory agreement for the future delivery of cotton was valid, as one in which an actual delivery of cotton was contemplated, or whether the transaction was a pure speculation on chances, evidence that the seller was a producer of cotton and had at the date of the agreement cotton planted and growing was relevant. . . An executory agreement for the future delivery of goods of a specified class and quality is, in legal effect, an agreement for the delivery of any goods of that class and quality, no matter where made or by whom produced; and when such an agreement is reduced to writing, parol evidence is not admissible to show that there was a collateral agreement between the parties that the goods specified in the contract should be produced by the seller."

In that case the written contract was silent as to whether the cotton mentioned in the contract was to be raised by the proposed seller or not; merely so many bales of cotton of a certain grade were called for. The buyer refused to take certain bales of cotton that were tendered to him, on the ground that they were not raised upon the lands of the seller, and alleged that there was a contemporaneous parol contract that the cotton was to be raised upon the seller's land. The court held that the evidence as to the parol contract could not be received to add to or vary the writing, and that the buyer was liable for refusing to take the cotton when tendered to him. In the case at bar, while the contract does in one of its clauses, in general terms, call for a designated number of bales of cotton of a certain grade and weight, it is specified, in another part of the contract, that "the above number of bales of cotton represents the crop or a part of the crop of the party of the second part for the present year." The point here insisted on is that this written contract itself shows that the parties had in contemplation, not an executory sale of cotton generally, but an executory sale of all or a part of a specified crop of cotton then growing.

We think that the court erred in striking the defense. The parties seem to have deliberately put into the contract the clause which provides that the cotton mentioned therein was specific cotton, or,

as the contract itself says, "represents the crop or a part of the crop" of the seller. The court, in construing the contract, must naturally give some meaning to this provision. It was doubtless inserted for the purpose of shutting off any contention that the contract related to a mere speculation in cotton futures, and to confine its terms to a subject-matter as to which the parties, the one a cotton planter and the other a cotton buyer, could legitimately and without question deal,—namely, the growing crop of cotton of the planter. While it is true that the parties might have made a valid contract by which the one should sell to the other cotton for future delivery other than the then growing crop of the planter, provided that they bona fide contemplated that the seller would procure by purchase or otherwise the actual cotton in fulfillment of his contract, nevertheless, since all such contracts are looked upon by the courts with critical eyes and are so frequently subject to avoidance upon impeaching the bona fides of the alleged intent to deliver actual cotton, it is most natural that the parties should seek to specify in advance exactly what cotton they have in contemplation, and to designate definitely from what source it shall be procured. The parties seem to have done this in the present instance. The contract may be fairly interpreted as meaning that the one party undertook to sell to the other so many bales of the cotton which it was expected that his crop would yield. We think the contract should be construed just as if it had said that Russell sold to Camp "ten bales of cotton out of his present crop." Thus construed, the case falls within the ruling in the leading case of Howell *v.* Coupland, L. R. 9 Q. B. 462; 1 Q. B. D. 258. In that case Coupland agreed to sell to Howell "200 tons of regent potatoes grown on land belonging to said Robert Coupland in Whaplode," at a certain price, for delivery during the months of September and October. At the time of making the contract, Coupland had sixtyeight acres of his farm at Whaplode devoted to the growing of potatoes, a portion of which was then sown and the remainder of which was sown in due course. The crop yielded only eighty tons, which were delivered, and Howell sued to recover damages for the non-delivery of the residue of the two hundred tons. The court of Queen's Bench entered judgment in favor of the defendant, and this was affirmed in the court of appeals. The present case is even stronger, for here the crop was not only sown, but was approach-

ing maturity at the time of the sale, thus making even more irresistible the construction that a particular crop of cotton, and not cotton generally, was in the contemplation of the parties at the time they entered into the contract. We hold that delivery of the entire crop fulfilled the contract. To the same effect, see Ontario Fruit Asso. *v.* Cutting Packing Co., 134 Cal. 21 (53 L. R. A. 681, 86 Am. S. R. 231). See also Williston on Sales, § 661; Benjamin on Sales, §§ 569, 570.

> *Judgment reversed.* *Russell, J., disqualified.*