### 5389. HAMBY *v.* TRUITT.

1. A contract is not unilateral where it is signed by both parties, recites a part payment, and shows on the one part an agreement to sell described property, and on the other part an agreement to pay a specified price therefor.

2. To authorize evidence seeking to supply essential particulars to an unambiguous written contract, by proof of a custom of business or trade so universal as to be by implication a part thereof, the custom must be distinctly pleaded.

3. A written memorandum or agreement relied upon to show compliance with the statute of frauds can not depend upon parol evidence to supply necessary or additional portions of the contract, but must be complete in itself.

4. A contract for the future sale or delivery of cotton, made by one engaged in the business of growing this commodity for market, to be

grown on his land in a year named, does not affirmatively show on its face that it was a gaming contract or a mere attempt to speculate in cotton futures.

DECIDED APRIL 30, 1914.

Action for breach of contract; from city court of Greenville—Judge Harwell presiding. October 27, 1913.

*N. F. Culpepper, Jones & Hatchett, McLaughlin & Jones,* for plaintiff.

*W. C. Wright,* for defendant.

WADE, J. J. M. Hamby brought an action against W. B. Truitt for an alleged breach of contract. The plaintiff set forth in his petition that Truitt was indebted to him in the sum of $1,312.50, principal, besides interest, because on September 16, 1911, they entered into a written contract in which the plaintiff agreed to sell and did sell to Truitt, and Truitt agreed to buy, "one hundred bales of cotton, consisting of fifty thousand pounds, at and for the sum of twelve cents per pound," to be delivered on the 7th day of October, 1911, at certain places designated; that previous to the day when the cotton was to be delivered the plaintiff "tendered to the defendant the amount and number of pounds of cotton of the grade and character contemplated in the contract," and demanded that the defendant receive the same and pay the plaintiff therefor; that the defendant declined absolutely to accept the cotton according to his written contract, and refused to pay the plaintiff therefor, and his only excuse for non-compliance with his contract was the decline in price of the commodity; that on September 16, 1911, the price of cotton as stipulated in the terms of the contract was 12 cents per pound, and on the day the tender was made to the defendant the market price was 9⅜ cents per pound; so that, by the failure and refusal of the defendant to accept the cotton and by the breach of the contract, the plaintiff was injured and damaged in the sum of $1,312.50; for which the plaintiff prayed judgment. Attached to the petition was a copy of the contract, as follows: "September 16, 1911. Received of W. B. Truitt five dollars as part payment for one hundred bales of cotton J. M. Hamby sold to said Truitt, to be delivered at Hogansville, Greenville, or at his home the 7th October next. W. B. Truitt agrees to pay twelve cents per pound for same. J. M. Hamby, W. B. Truitt. Witness: J. W. Fields."

The defendant filed a demurrer to the petition, on the following grounds: (1) Because no legal cause of action is set forth. (2) The allegation that the one hundred bales of cotton were to consist of fifty thousand pounds is demurred to specially because the alleged written contract is silent as to the number of pounds and the contract is a matter for construction by the court and can not be added to or taken from. (3) The written contract referred to in the petition did not amount to a lawful and valid contract, or to one susceptible of enforcement by law, for the reason that no number of pounds of cotton is specified in the same, the weight of the bales is not set forth, the grade of the cotton is not therein specified, and the contract therefore is too vague, indefinite, and incomplete to be enforced by law. (4) The contract was unilateral in its nature and constituted only an offer to sell the cotton. (5) The written contract shows on its face that it was a speculation alone and a gaming contract, and no actual delivery of cotton was contemplated by the parties.

The plaintiff amended his petition by adding the following allegation: "Petitioner is now and was at the day and date of said contract which was made and entered into on the 16th day of September, 1911, a planter in said county, engaged in the business of growing cotton for sale, and this sale was to embrace the cotton grown said year 1911 on plaintiff's lands." This amendment was allowed by the court. The plaintiff offered the following amendment, which was disallowed by the court: "2d. Your petitioner further shows that the weight of said bales of cotton specified in said contract was to be 500 pounds each. 3d. Your petitioner further shows that it was then and there agreed that the class or grade of said cotton was to be middling, or the usual grade as classed by the commercial world." The court sustained the general demurrer and dismissed the petition, and the plaintiff brought the case here for review, complaining that the court erred in refusing to allow the second amendment recited above, and in dismissing the petition.

1. The 4th ground of the demurrer alleges that the contract sued upon is unilateral. We do not agree with this contention, as the contract recites that $5 has actually been received by Hamby from Truitt, as part payment for the cotton, and also recites that Hamby has sold a specified number of bales of cotton to Truitt for which Truitt agrees to pay twelve cents per pound; and it is signed

by both Hamby and Truitt. It is unnecessary to discuss this ground at length or to cite numerous authorities on the subject. See, however, *Luke* v. *Livingston,* 9 *Ga. App.* 119 (70 S. E. 596), and *Copeland* v. *Montgomery,* 8 *Ga. App.* 634 (70 S. E. 30).

2. The 2d and 3d grounds of the demurrer will be considered together. Under the ruling made in *Stewart* v. *Cook,* 118 *Ga.* 541 (45 S. E. 398), the plaintiff might have alleged in his petition that a "bale of cotton," according to the custom of the cotton business or trade, meant a bale of 500 pounds of middling cotton; and might have alleged further (the class, grade, or quality not being stipulated in the contract) that middling cotton was implied or understood, according to the universal custom of the same business or trade; and if such allegations had been made, evidence would have been admissible to show the trade meaning of the word "bales," and that middling cotton was to be supplied where the class or grade was not named, according to the custom of the cotton trade. See *Mott* v. *Hall,* 41 *Ga.* 117; *Ocean Steamship Co.* v. *McAlpin,* 69 *Ga.* 437, 442; *Vardeman* v. *Penn Mutual Life Insurance Co.,* 125 *Ga.* 120 (54 S. E. 66, 5 Ann. Cas. 221); *Beck* v. *Thompson & Taylor Spice Co.,* 108 *Ga.* 242 (33 S. E. 894); Civil Code, § 1, par. 4. In the case of *Beck* v. *Thompson & Taylor Spice Co.,* supra, the contract failed to set out the time within which it was to be performed, and the court held that this did not render the contract ambiguous so as to admit of explanation by other evidence. The necessary averment as to the time for performance the plaintiff undertook to supply by allegation of the existence of a general custom or usage, in the particular business in which he and the defendant were engaged, as to the time such a contract should remain in force when not otherwise agreed. The court held, that this amendment as to the custom should have been allowed, and that the court below erred in rejecting it, especially since the amendment explicitly alleged that the custom became a part of the contract. See *Horan* v. *Strachan,* 86 *Ga.* 408 (12 S. E. 678, 22 Am. St. R. 471).

3. The plaintiff in error excepts to the refusal of the trial court to allow him to amend by setting out that the "weight of said bales of cotton in said contract was to be 500 pounds each;" and that "it was then and there agreed that the class of said cotton was to be middling, or the usual grade as classed by the commercial

world." We think the court was undoubtedly right in disallowing the amendment since the effect of the agreement alleged therein would have been to extend the written agreement, by the addition of a parol agreement as to the weight of the bales of cotton and the quality or grade of the cotton to be supplied. As repeatedly said by our Supreme Court, all the material terms of a contract for the sale of goods amounting to more than $50 in value must be in writing, signed by the party or parties thereto, where the contract is relied upon to take the transaction out of the statute of frauds. *Stewart* v. *Cook,* 118 *Ga.* 541 (45 S. E. 398) ; *Turner* v. *Lorillard Company,* 100 *Ga.* 645 (28 S. E. 383, 62 Am. St. R. 345) ; *Wilkerson* v. *Patton Sash, Door & Building Co.,* 10 *Ga. App.* 697 (73 S. E. 1088) ; *Borum* v. *Swift,* 125 *Ga.* 198 (53 S. E. 608).

4. The 5th ground of the demurrer alleges that the contract shows on its face that it was a speculation on chance alone, and that no actual delivery of cotton was contemplated. This contention we do not consider well taken, in the light of the amendment allowed by the court, as hereinbefore set forth. *Luke* v. *Livingston,* 9 *Ga. App.* 116 (70 S. E. 596) ; *Russell* v. *Camp,* 9 *Ga. App.* 691 (72 S. E. 60). In our opinion there is a radical difference between an amendment setting up that the weight of bales of cotton named in a contract was to be 500 pounds each, and that the class or grade of the cotton was to be middling or the usual grade as classed by the commercial world, where the contract is silent as to both these particulars, and an amendment setting out that the words "bales of cotton," in a contract or agreement, where nothing more is stated, mean bales of a certain weight, containing cotton of a certain class or grade, according to the universal custom of the cotton business or trade. In the one instance the amendment would let in testimony as to an *agreement* between the parties at the time the written contract was entered into that the cotton covered thereby was to be "middling, or the usual grade as classed by the commercial world," and that the weight of the cotton was to be five hundred pounds per bale, when no such agreement was contained in the written contract; whereas, if an allegation were made that the word "bale," as applied to cotton, meant by the universal usage and custom of the cotton trade *a bale of five hundred pounds of middling lint cotton,* and the plaintiff should support this allegation by proof, there would be no attempt thereby to vary the terms

of the written contract, but such evidence would merely supply the actual trade meaning of the term or terms already in the contract.

Since, without allegations supplying an exact interpretation, under some universal custom of business or trade, of the words "one hundred bales of cotton," in the written contract, it would be impossible to base any definite recovery thereon, the trial judge did not err in sustaining the first ground of the demurrer, alleging that no cause of action was set out in the petition, even with the first amendment allowed. *Judgment affirmed. Roan, J., absent.*