# Shackelford *v.* Sloss Iron & Steel Co.

## *Action of Assumpsit.*

1. *Contract to supply ore; construction thereof.*—A contract between a mining company and a furnace company, whereby the mining company agrees to sell and ship to the other company "their entire output of brown ore up to one hun-

[Shackelford v. Sloss Iron & Steel Co.]

dred tons per day," for a stated period of time at a fixed price, binds the mining company to the purchasing company to sell and ship to the furnace company the output of such ore from said company's own mines, which the furnace company agrees to receive up to a certain number of tons per day and under such contract, the furnace company is not bound to receive ore which is the output of the mines of some other company other than the one which is the party to the contract; and the fact that during the period covered by the contract, the furnace company accepted deliveries under the contract of ore which was not the output of said mining company's mine, does not bind the furnace company to continue to receive such ore in the performance of the contract.

APPEAL from the City Court of Birmingham.

Tried before the Hon. CHARLES A. SENN.

This was an action of assumpsit, brought by the appellant, W. C. Shackelford, as assignee of the Calhoun Mining Company, against the appellee, the Sloss Iron & Steel Company, to recover damages for the alleged breach of a contract made by and between the Sloss Iron & Steel Company and George C. Jones, doing business under the name of the Calhoun Mining Company.

The complaint, as amended, contained seven counts. There were demurrers interposed to these counts, some of which were sustained and some of which were overruled; but under the opinion on the present appeal, it is unnecessary to set out the pleadings at length. Issue was joined upon the plea of the general issue.

The contract, the breach of which is claimed, is sufficiently stated in the opinion.

It was shown by the evidence that the Calhoun Mining Company, after the execution of the contract sued upon, shipped to the defendant iron ore, which was not the output of the mines of the Calhoun Mining Company, but was purchased by it from other mining companies. It was also shown that for quite a while this ore, which was not the output of the Calhoun Mining Company, was shipped by the Sloss Iron & Steel Company, and paid for as provided under said contract.

The evidence for the defendant tended to show that during this time defendant was not notified and did not know that ore which was not the output of the mines of the Calhoun Mining Company was shipped to the defendant, and that as soon as the defendant ascertained this fact, he notified the Calhoun Mining Company that the contract was terminated.

The case was tried by the court without the intervention of a jury, and upon the request of the plaintiff the court made a special finding, and upon the facts as so found, rendered judgment in favor of the defendant. To the rendition of this judgment the plaintiff excepted. The plaintiff appeals, and assigns as error the rendition of judgment in favor of the defendant.

WARD & HOUGHTON, for appellant.—A contract will be construed as unconditional rather than conditional unless it is shown that the parties understood it otherwise.—*McFadden v. Henderson*, 128 Ala. 221; *Crass v. Scruggs*, 115 Ala. 258. And the conduct of the parties is persuasive of their intent.—*Crass v. Scruggs, supra; Wilkinson v. Roper*, 74 Ala. 140-145; *Comer v. Bankhead*, 70 Ala. 136; *Chicago v. Selden*, 9 Wall 50; 2 Benj. on Sales, § 858.

There was a modification by the acts of the defendant in accepting shipments of ore for months, when the books of defendant showed, and its officials who weighed the ore had knowledge that the ore came from different places than the mine of Jones. This was a modification of the contract by actions, and a contract may be modified by parol.—*Andrews v. Tucker*, 127 Ala. 602; *Robinson v. Bullock*, 66 Ala. 548; *Cornish v. Suydam*, 99 Ala. 620. And be construed in the light of surrounding circumstances.—*H. A. & B. R. R. Co. v. B. U. Ry.*, 117 Ala. 511. The breach, if any, was not such as to defeat the purpose of the contract.—*Worthington v. Gwin*, 119 Ala. 44-54-55.

WALKER, TILLMAN, CAMPBELL & WALKER, *contra.*

DOWDELL, J.—This is an action of assumpsit. The complaint contains several counts. The first being the

common count for work and labor done. Nothing is claimed or insisted on under this count. The other counts claim damages for alleged breach of a contract in writing made between Sloss, Iron & Steel Company, and George C. Jones, doing business under the name of the Calhoun Mining Company; the appellant, W. C. Shackelford claiming as assignee. Leaving out the formal commencement, the contract reads as follows: "That the Calhoun Mining Company hereby agrees to sell and ship to Sloss, Iron & Steel Company their entire output of brown ore, up to one hundred tons per day, for a period of seven months, commencing June first, 1900, at a price of one dollar and 25-100 ($1.25) per ton of two thousand two hundred and forty (2240) pounds f. o. b. their mines. Furnace weight to govern in settlement, subject to such check at any time as Calhoun Mining Company may desire to put on them. In consideration of the above agreement, Sloss, Iron & Steel Company hereby agree to receive from Calhoun Mining Company the ore as above mentioned, such ore to be delivered shall be of marketable quality, and of a fair average of brown iron ore ordinarily mined and shipped from said district; the Sloss, Iron & Steel Company, or its successors, shall have the right to reject any car or cars of ore that do not carry, fairly sampled, forty-four (44) per cent. of metallic iron, for the purpose and at the prices named, and to pay therefor on or before the 10th day of each month, after the amount due on mortgage and interest is paid, for all shipments made during the previous month. It is mutually understood and agreed that during strikes or agitations among workmen at the blast furnaces and mines, or other unforeseen circumstances which stop or diminish the production, as well as during the interruption of navigation through strikes or other circumstance, deliveries against this contract may be suspended, but as soon as such interruptions, etc., are overcome, shipments shall be resumed under this agreement at contract rates; buyers and sellers, are, however, bound to fulfillment of this contract afterwards." This contract bears date of June 12, 1900.

[Shackelford v. Sloss Iron & Steel Co.]

The assignments of error relate to the rulings of the court on the pleadings; to the conclusions on the evidence, and to the judgment rendered. It is unnecessary to consider the assignments separately, as the question presented by the rulings turns upon a proper construction of the contract. If the appellant's contention as to the meaning of the contract is right, the judgment should be reversed, while, on the contrary, if the appellee is right in its contention, the judgment should be affirmed.

The court, at the instance and request of the appellant, who was the plaintiff in the suit, made a special finding of the facts, which finding is set out in full in the record. No question is raised, but on the contrary it seems to be conceded, that under the act approved February 28, 1889, (Session Acts, 1888-9, p. 992), relating to the city court of Birmingham, this court may review the findings of the city court on the evidence. The same result in this case, however, would follow, whether the findings by the trial court be reviewed or not. Three of the assignments of error relate to the findings of the court, but none of these assignments are insisted on in argument, except the finding by the court, "that the defendant was not notified and did not know that the ore shipped as aforesaid was not the output of the mines of the Calhoun Mining Company." It is sufficient to say in this connection that the evidence warranted this finding of fact by the court. Moreover, we think that all of the special findings by the court are fully sustained by the evidence. Among other findings by the court, was the finding that there had not been any change or modification of the contract sued on.

The contention of the appellant is, that the defendant was bound to take 100 tons of the ore of a certain quality each day for seven months, if the Calhoun Mining Company could furnish it, no matter whether it was the *out-put of their mines or not.* The contract in its language is plain and unambiguous and calls for no construction. Where such is the case, the parties to it are bound by its terms, and the courts will not go outside of it to inquire into the conduct and motives of the parties

in making it. This contention of appellant would render meaningless the terms of the contract, by which the Calhoun Mining Company agreed to sell and ship to the defendant, and the defendant agreed to receive and pay for at a stipulated price, *"their entire out-put of brown ore up to one hundred tons per day"* for a stated period of time, and the price was "f. o. b. their mines." That the Calhoun Mining Company had mines is not denied. Could it be affirmed under the above terms of the contract that the Calhoun Mining Company was bound to deliver 100 tons of ore of the kind and quality named, except it be out-put of *their mines?* We think not. The parties being *sui juris* it was perfectly competent for them to contract either for the *out-put* of a given mine, or generally, for a stated amount of ore per day. The language of the contract is clear and there is no element of uncertainty in it, so far as the question here required to be considered. The words employed, *"their entire out-put,"* and *"their mines"* clearly import the operation of the *mines* of the Calhoun Mining Company, and that the defendant should take and pay for the out-put up to 100 tons per day. If it had been the purpose of the parties to contract for the sale and purchase of 100 tons per day of a certain quality absolutely, it would have been easy to express that purpose, and the language used in the contract would not have been employed to that end—indeed, the language employed, the terms used, is wholly inconsistent with such purpose and meaning.

If it be conceded that the defendant during the period covered by the contract, at times accepted deliveries on the contract, of ore not the out-put of the mines of the Calhoun Mining Company, without more this would not bind the defendant to continue to receive such ore in performance of the contract. It could as reasonably be contended that, because defendant received and paid for ores of a quality inferior to the contract standard, it thereby obligated itself to continue during the life of the contract to receive and pay for inferior ore. But in this case, according to the special finding of the court, the defendant did not know until about October 15th that George C. Jones, who was in fact the Calhoun Min-

ing Company, was buying the ore he was delivering un-
der the contract, and on the 19th of October, defendant
notified him, that it would not receive *any more ores
under the contract.*

The rulings of the trial court are in accord with the
views we have expressed. The result of the trial court's
finding of facts, was, that there had been no breach in
the contract by the defendant and judgment was ren-
dered accordingly, and in all of which we concur.

The judgment appealed from will be affirmed.