GEORGE A. MOSBY, Appellant, v. J. W. SMITH, L. S. GAINES, and W. O. B. SMITH, Respondent.

Kansas City Court of Appeals, February 21, 1916.

1. **CONTRACTS: Damages: Sale of Cattle.** This is an action for damages for breach of a contract for the sale of "about 900 two-year-old steers." The sellers delivered 687 head and agreed to deliver the remainder later if found on the ranch of the persons from whom they had previously purchased them. No more were delivered, the seller claiming none were subsequently found on that ranch. The damage claimed was the difference between the contract price and market value at the time and place of

delivery  It was *held* that the contract did not express an unqualified and unconditional obligation on the part of the defendants to deliver 900 head of cattle; that the purchaser knew when the contract was made that the exact number of two-year-old steers on the ranch was not known to the sellers or those from whom they bought them and could not be ascertained until the round-up for delivery and that therefore the purchaser was not entitled to the damages claimed.

2. **EVIDENCE: Parol.** An explanation or enlargement of the terms of a written contract by parol evidence is admissible in evidence, where the writing signed by the parties shows on its face that it is incomplete and does not purport to, be a complete expression of the entire contract.

Appeal from Jackson Circuit Court.—*Hon. Frank G. Johnson,* Judge.

AFFIRMED.

*Erasmus C. Hall* for appellant.

*Deatherage & Creason* for respondents.

JOHNSON, J.—Plaintiff sued defendants J. W. Smith, L. S. Gaines and W. O. B. Smith, partners doing business at Kansas City in the name of Smith & Gaines, for a breach of the following written contract:
"Kansas City, Mo., Aug. 22, 1912.
"This agreement made and entered into by and between Gaines & Smith, parties of the first part, and Geo. A. Mosby, party of the second part.

Parties of the first part agree to sell and deliver f. o. b. cars Bovena, Texas, about 900 2-year-old steers recently contracted by L. S. Gaines from Van Natta Bros. Said cattle known as the V brand of cattle, branded on left jaw and thigh.

Party of the second part has paid six thousand ($6000) dollars, receipt of which is hereby acknowledged, and is to pay forty-seven dollars and fifty cents ($47.50) per head for cattle received and delivered on or before Oct. 20, 1912, as per contract.

At the time of delivery of said cattle, party of the second part is to pay McNetta Bros. forty-five dollars ($45) per head, less five thousand ($5000) dollars and to pay Gaines & Smith two dollars and fifty cents ($2.50) per head for all cattle received, less one thousand dollars ($1000).

GAINES & SMITH,
by J. W. SMITH,
J. W. SMITH.
GEORGE A. MOSBY."

The petition alleges that defendants delivered 687 head of the cattle described in the contract on October 20, 1912, and agreed to deliver the remaining 213 head in the following Spring, but failed and refused to perform that agreement. The value of the cattle not delivered is alleged to be $64.50 per head, and the damages claimed are $17 per head, the difference between the contract and market values at the time and place for delivery. In addition to filing an answer which set up defenses, the nature of which will be disclosed in our review of the case, defendants filed a counterclaim for $717.50, due and payable on the purchase price of the 687 head of cattle delivered. The verdict of the jury was for defendants on both the cause of action pleaded in the petition and on the counterclaim and in due course of procedure plaintiff brought the case to this court by appeal.

Defendant Gaines lived at Glazier, Texas, where he was engaged in the banking business and represented the interests of defendants who were dealers in cattle and had an office at the Stock Yards at Kansas City. On August 17, 1912, Gaines, on behalf of defendants, entered into a contract in writing with Van Natta Brothers, the proprietors of a cattle range of 200,000 acres or more in Bailey county, Texas, for the purchase of the two-year-old steers on that range which were branded V on the left thigh. The contract was as follows:

Amarillo, Texas, Aug. 17, 1912.

"WITNESSETH, this agreement made by and between Van Natta Bros. of Amarillo, Texas, parties of the first part, and Smith and Gaines of Glazier, Tex., parties of the second part:

WITNESSETH, that said Van Natta Bros. parties of the first part, for and in consideration of five thousand dollars paid in hand the receipt of which is hereby acknowledge, agree to sell parties of second part nine hundred two-year-old steers more or less branded V on left thigh situated on said Van Natta Bros. ranch in Bailey county, Texas, at forty-five dollars ($45) per head. Said parties of second part have privilege of two deliveries, or privilege to leave cattle on range they are now on until Oct. 20, 1912, at which time shall be final delivery made.

Said parties of second part agree in case said cattle are taken in two deliveries to pay for same f. o. b. cars Bovina, Texas.

Van Natta Bros.

(SEAL)           Per Jay M. Van Natta.
(SEAL)                Smith & Gaines
                   Per L. S. Gaines."

Plaintiff who is in the cattle business in Clay county in this State was at Amarillo, Texas, at the time this contract was made and immediately thereafter entered into negotiations with Gaines for the purchase of all the cattle defendants had just contracted to purchase. Plaintiff went to the Van Natta ranch to inspect the cattle, after which he returned to Kansas City and met Gaines by appointment at the Union Station. Gaines, on behalf of defendants, had paid Van Natta Brothers $5000, on the purchase price and offered, so he states, to assign the contract to plaintiff if he would pay the consideration of $45 per head to Van Natta Brothers on the delivery of the cattle, less $5000, and would pay defendants a profit of $2.50 per head and reimburse them for the down payment of $5000. Plaintiff was to pay $6000 at once, $1000 of which was an advance payment on

defendant's profit. Gaines had left the contract at Glazier and agreed to return home immediately, to indorse on the contract an assignment to plaintiff, and to mail the contract and assignment to the Lee Live Stock Commission Company at the Kansas City Stock Yards, where it would be delivered to plaintiff. After concluding this agreement Gaines telephoned his partner J. W. Smith about it and started that evening on his return to Glazier. Arriving there he wrote the following indorsement on the Van Natta contract:

"Glazier, Texas, August 23, 1912.
"For value received we hereby assign our interest in this contract to A. G. Mosby, subject to all the conditions in said contract between Van Natta Brothers and Smith & Gaines.

SMITH & GAINES
By L. S. GAINES."

He mailed the contract thus assigned to the Lee Commission Company but it appears that it was not delivered to plaintiff. The day after the conversation at the Union Station plaintiff and J. W. Smith, acting for defendant entered into the contract in suit at Kansas City and plaintiff paid defendants the sum of $6000 as agreed. Plaintiff denies that he entered into an oral agreement with Gaines at the Union Station, or that he agreed to purchase the Van Natta contract. He states that the conversation he had with Gaines related to the purchase of the cattle, not the contract with Van Natta Brothers, and that he left the negotiations open until he could consult with his brother at Liberty. The next morning he saw J. W. Smith at Kansas City and entered into the contract in suit which he claims was the only contract he had with defendants.

We think the conclusion is irresistible, even from the evidence of plaintiff, that the understanding and agreement of the parties were that plaintiff was to purchase of defendants the cattle they had just bought from Van Natta Brothers; that plaintiff knew that the number of the two-year-old steers on the ranch was not known to Van Natta Brothers, nor, of course, to Gaines, and could not

be ascertained until the round-up for delivery and, there-fore, that the number stated in the contracts was a mere estimate. Plaintiff received a delivery of the 687 head direct from Van Natta Brothers at Bovina, Texas, and paid them $45 per head for that number. He insisted on the delivery of the remainder to fill out the total number of 900 head and was informed by Van Natta Brothers that the number delivered comprised all of the two-year-old steers they had been able to collect from the range, but after the Spring round-up they would deliver to plain-tiff all other such steers they succeeded in finding. Plain-tiff reluctantly agreed to wait until Spring for the de-livery but contended that his contract with defendants bound them to deliver 213 head or "about" that number, which he construed to mean within ten or fifteen head either way of that number.

After the Spring round-up Van Natta Brothers claimed that no other two-year-old steers had been found and defendants being unable to procure any further de-livery, plaintiff brought this suit for the difference be-tween the contract price and the market value of the 213 head not delivered, his theory being that he is a stranger to the Van Natta contract and that his contract with de-fendants was complete in itself, unambiguous, and bound defendants to deliver "about" 900 head of cattle which, as stated, he interprets as meaning within ten or fifteen head of that number. We quote from his testimony:

"Q. You couldn't have found them could you?" (Re-ferring to finding the 213 head on the Van Natta ranch.) "A. No, sir, I don't suppose I could. I am not familiar with their ranch."

"Q. And Smith & Gaines couldn't have found them? A. I don't believe they could, no sir.

"Q. Well, both Smith & Gaines did what they could to get the cattle, didn't they? A. Yes, I sup-pose they did in that way.

"Q. And you did all you could to get them? A. Yes, I did all I could but I can't go down there and round up a bunch of cattle that way on a ranch that I don't know anything about . . .

"Q. And it was to buy these Van Natta cattle—the V brand? (Referring to his agreement with defendant Smith.) A. Yes, sir.

"Q. The cattle that Smith & Gaines had purchased from Van Natta Brothers? A. Yes, sir.

"Q. And you didn't know how many there would be? A. No. sir.

"Q. That was why you put in the contract 'about'? A. Well they claimed there was nine hundred head of them. . . . that's the reason that was put in there; what I was to get was about nine hundred head of cattle—not six hundred and seventy head or eight hundred head, and that might mean, as I said, nine hundred and two, or it might mean eight hundred and ninety head or eight hundred and eighty-five head—ten or fifteen less. . . .

"Q. Why did you wind up in your contract by saying you were to pay $47.50 per head for the cattle received and delivered? A. You can't expect me to pay for some that were not delivered.

"Q. They couldn't deliver any more than Van Natta delivered to them? A. I suppose not, but it was up to them to see that Van Natta delivered to them the number that he contracted to deliver. . . .

"Q. When you made that contract with Mr. Smith, you understood that the agreement was that Smith & Gaines intended for that contract to cover and include to be delivered to you just all the cattle that they could get under that contract with Van Natta? A. Yes, sir.''

There is no proof nor room for a reasonable inference based on evidence that Van Natta Brothers failed to deliver all the cattle of that description they owned or had on the ranch. At one time one of the defendants, in a letter to plaintiff expressed the conviction that there still were 200 such cattle on the ranch, but there are no facts in evidence to support that conclusion. Whether Van Natta Brothers delivered to plaintiff all such cattle they had on the ranch, or in bad faith secreted or disposed of a part of the herd they had agreed to deliver, there can be no doubt that defendants, in good faith, did everything

they could to obtain all the cattle called for by their contracts with plaintiff and with Van Natta Brothers, and the case in hand is resolved into this question: Is the contract in suit complete, and definite, and did it impose upon defendants the unconditional obligation to deliver to plaintiff 900 head of two-year-old steers from the Van Natta ranch, branded V on the left thigh? If the contract must be so construed then plaintiff is right in his contention that the court erred in admitting evidence of precedent or contemporaneous oral agreements which tended to vary and alter the terms of the written contract. The rule invoked is elementary and needs no elucidation. And on such hypothesis counsel further should be sustained in his position that if the contract in suit is clear, complete and definite, it should not be loaded down with the Van Natta contract, nor should defendants' obligation to deliver 900 head of cattle be regarded as qualified or affected by their inability to procure the delivery of that number by their vendors. If defendants unconditionally agreed to deliver a definite quantity of the described property, their inability to perform would not excuse them from liability for the resulting damages to their vendee.

But the contract in suit does not express an unqualified and unconditional obligation on the part of defendants to deliver 900 head of two-year-old steers of the designated brand and does refer to the Van Natta contract in a manner expressive of a mutual intention to make that contract a part of the present contract and to restrict the obligation of defendants with respect to quantity to that of delivering to plaintiff the cattle—no more and no less—which they would receive through the performance of the Van Natta contract.

The rule forbidding the explanation or enlargement of the terms of a written contract by parol evidence does not apply where the writing signed by the parties shows upon its face that it is incomplete and does not purport to be a complete expression of the entire contract. [Koons v. Car Co., 203 Mo. l. c. 255, and cases cited.] The obligation defendants assumed was to deliver to plaintiff the steers they had "recently contracted from Van Natta

Brothers,'' approximated at 900 head and the reciprocal obligation of plaintiff was to pay for the cattle thus delivered ''as per contract'' at the rate of $47.50 per head, of which he was to pay $45 to Van Natta Brothers and $2.50 to defendants. Obviously the term ''as per contract'' referred to the Van Natta contract and all of these provisions together clearly express a mutual intention that the Van Natta contract should become a part of the agreement between the present parties and that the obligation of defendants would be to deliver to plaintiff all the cattle they received from Van Natta Brothers for a profit of $2.50 per head.

Turning to the Van Natta contract which, under the views expressed, must be held to have been properly admitted in evidence, we interpret it to mean that the vendors undertook to deliver to defendants all of the two-year-old steers they had on their ranch of the designated description which they were to keep until the date fixed for delivery. There are cases where such terms as ''about'' and ''more or less'' when used in contracts to qualify the stated quantity or number are given the meaning of an approximation with the stated quantity or number as a fixed basis for such approximation, and there are other cases where such terms are treated as a mere estimate of an unknown and indefinite quantity or number which the parties have agreed shall be the subject-matter of the contract. Each definition may be soundly applied according to the intention of the parties which must be ascertained from all the terms of the contract. Manifestly the subject-matter of the Van Natta contract was intended to be all of the described two-year-old steers on that ranch, and the mentioned number was inserted as an estimate of an unknown number which could not be ascertained until after the round-up. Whether or not an estimate of quantity or number may be so wide of the mark as to be unreasonable or amount to a fraudulent representation is a question upon which we do not feel called upon at this time to express an opinion. It may be conceded for argument that Van Natta Brothers in delivering only 687 out of an estimated number of 900

head of cattle have incurred a liability as for a breach of their contract with defendants; but it would not follow that defendants have incurred a similar responsibility to plaintiff since, as we have shown their obligation must be construed as one to deliver to plaintiff the cattle they received from their vendors. Plaintiff would be entitled in an appropriate action to enforce any liability Van Natta Brothers may have incurred to defendants since, in legal substance and effect, he purchased all the rights defendants had under that contract and is entitled to take their place, but he has no cause of action against defendants who, under the conceded facts have fully performed their contract with him.

The court would have been justified in peremptorily directing a verdict for defendants both on the cause of action pleaded in the petition and on the counterclaim, and this being so, it is not necessary to go into other questions argued in the briefs.

The judgment is affirmed. All concur.