MASON, APPELLANT, *v.* MADSON, RESPONDENT.

(No. 6,791.)

(Submitted September 28, 1931. Decided October 22, 1931.)

[4 Pac. (2d) 475.]

490

*Messrs. Brown, Wiggenhorn & Davis* and *Mr. Roy F. Allan,* for Appellant, submitted a brief; *Mr. Horace S. Davis* argued the cause orally.

492

*Messrs. Blenkner & MacFarlane,* for Respondent, submitted a brief; *Mr. E. A. Blenkner* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This is an appeal from a judgment entered upon a directed verdict in favor of defendant.

The complaint alleges that defendant was at all times engaged in the business of growing sheep and lambs in the vicinity of Absarokee, Montana, and that on or about April 5, 1929, the plaintiff bought from him 225 white-faced lambs, all of the said defendant's lamb crop for the year 1929, at so much per pound, and paid defendant the sum of $225 as part of the purchase price, promising to pay the balance due at the time of the delivery of the lambs; that the defendant bargained and sold and promised to deliver to plaintiff 225 white-faced lambs, all of his crop of lambs for the year 1929, for the price and at the time averred; that the plaintiff had duly performed all of the conditions of the contract on his part; that on or about October 4, at Stillwater county, the defendant falsely, fraudulently and intentionally, and with the intent to deceive plaintiff and to induce him to accept all of the lambs hereinafter described, did pretend, represent, and profess that he was then delivering lambs which were all of his

crop of lambs for the year 1929, to-wit: 228 white-faced lambs, consisting in addition to the lambs of defendant's crop, of approximately 52 lambs which were acquired by the defendant by purchase on or about October 1, 1929, from another lamb grower, of which plaintiff was ignorant at all times up to October 11, 1929; that all of the 228 lambs so delivered were variously and indiscriminately marked and branded, and the 52 lambs were mixed and confused with the lambs of defendant's crop for 1929, and were of the same kind, description, ages, and general appearance, and at the time delivered, plaintiff could not and did not distinguish, among the lambs delivered, those which were substituted to the number of approximately 52 from those actually grown and raised by the defendant during the year 1929; that defendant concealed the facts from the plaintiff with intent then and there to deceive him, and to induce him to accept the 52 lambs under the contract, and plaintiff, thus deceived, accepted the lambs; that the representations made by defendant to plaintiff respecting the 52 lambs were false; that plaintiff would not have accepted the 52 lambs if he had known the facts; that plaintiff was not obligated to accept the 52 lambs; that plaintiff verily believed and relied upon the false and fraudulent representations and concealment of fact by the defendant as aforesaid, and was tricked and deceived thereby, and was thereby induced to accept and did accept all the 228 lambs, and did pay to the defendant $530.75 for the 52 lambs; that on October 11, the plaintiff discovered the facts, and on October 15 offered to restore to the defendant the lambs to the number of approximately 52 which were not of the defendant's crop of 1929, upon condition that the defendant would restore to plaintiff the price defendant had received for the 52 lambs, and plaintiff was then and there and at all times mentioned in the complaint, ready, able, and willing in good faith to restore to the defendant the lambs, but the defendant at all times positively refused, and still refuses to restore the price; that by reason of the premises, the defendant has had and received and now has, to and for the use and benefit of defendant, the full sum

of $530.75, which defendant has refused to repay, notwithstanding the demand. Wherefore, plaintiff prayed judgment for the sum of $530.75, with interest thereon from October 14, 1929, and for his costs, with all proper relief in the premises.

The answer denied the allegations of the complaint, except as specifically admitted. Defendant admitted the execution of the contract by himself and plaintiff and the receipt of the $225, the first payment on the lambs; admitted the delivery of 228 lambs to the plaintiff and the receipt of "the balance of the purchase price agreed upon in accordance with the terms and conditions of the said contract," and alleged that the contract had been in all things fully and completely executed and performed by both parties, and that nothing remained to be done by either.

Plaintiff, in the spring of 1929, was purchasing lambs for fall delivery in defendant's neighborhood. Shortly before lambing time, he approached defendant and inquired if he desired to contract any lambs, and defendant said he had not thought about it. They discussed the price, and defendant said he thought he "could safely contract 225 head." The two then entered into a contract whereby defendant agreed to sell to plaintiff the following described livestock: * * *

| "No. Head | Description | Brands | Price per Cwt. Head | Time and Place of Delivery F. O. B. Cars |
|---|---|---|---|---|
| 225 | white-faced lambs all of 1929 lamb crop | M | | Oct. 1 to 5" |

The price agreed upon was 11 cents and 13 cents per pound for wethers and ewes, respectively.

"All sick, cripples, bucks, loco or cull lambs weighing less than 40 pounds rejected, and agree to deliver said livestock free on board cars at Railway Stockyards at Reed Point 13 Station, on or about Oct. 1 to 5, 1929. * * *

"Acknowledge receipt of $225 in part payment for above mentioned livestock. The balance to be paid at time of delivery."

It seems to be conceded by respective counsel that oral testimony to explain the contract was admissible, and both sides introduced evidence to that end.

When the contract was made, defendant had 250, more or less, of breeding ewes, but as to this plaintiff gave no concern; he did not see the ewes at that or at any other time. The lambs contracted for were "just common sheep." Some conversation was had as to the meaning of "white-faced lambs." Defendant said, "Now if you turn in this contract they may throw out anything that is not absolutely white-faced," to which plaintiff, who was writing the contract, answered: "That is immaterial, so long as they pass as white-faced." The ewes having failed to produce enough lambs to enable him to deliver the number named in the contract, defendant procured of Maxwell, a neighbor, 52 lambs similar to those he already possessed. Defendant's lambs were branded with an M, some in red, some in "brown, slate color"; the Maxwell lambs were branded M in red. The lambs, being intermingled, were so nearly alike that on the day of delivery plaintiff was unable to distinguish the Maxwell lambs from the others in the bunch.

On October 4, pursuant to plaintiff's direction, defendant delivered to plaintiff 228 lambs of mixed weights, of 1929 lambs branded with an M on the back, some with cropped ears, some with split ears, and some without ear marks. Defendant did not say anything about the Maxwell lambs, and plaintiff did not know the lambs he received were other than the lambs from defendant's ewes.

Three or four days after he had received and paid for the lambs, plaintiff ascertained that defendant had turned in the Maxwell lambs on the contract, and, upon being confronted, defendant admitted it. Plaintiff then served formal notice in writing upon defendant, rescinding the sale as to the 52 Maxwell lambs and tendering them to defendant upon condition he repay their price. Upon defendant's refusal, plaintiff brought this suit for the price of the 52 lambs.

The action is to enforce rescission for fraud practiced, but ▓▓▓ the complaint is drawn for money had and received to plaintiff's use. At the threshold, defendant argues that the action in this form cannot be maintained. We shall not enter into any discussion of this feature of the case further than to say that "this is a suit to enforce a rescission which has been offered and refused, and it is of equitable origin and nature." (*Spreckels* v. *Gorrill*, 152 Cal. 383, 92 Pac. 1011, 1016.) An · action for money had and received is governed by equitable principles. Under our procedure, which abolishes the distinction between forms of action, the court could in this action administer equitable relief, regardless of the question whether, under former systems of jurisprudence, the action would be deemed an action in assumpsit for the money paid, or an action in equity to enforce rescission and a return of the consideration. (*Spreckels* v. *Gorrill*, supra.)

Upon the merits, plaintiff's position is that he did not agree to purchase any lambs other than from defendant's ewes. Defendant, on the other hand, claims that he was obligated to deliver to plaintiff 225 lambs; he paid Maxwell the same price for the 52 lambs which he, defendant, received for them from the plaintiff. No question is raised as to the kind or quality of any of the lambs; the Maxwell lambs were of the same kind and quality as those produced by defendant's ewes. Defendant's lambs were not more desirable than other lambs of like kind. They did not possess any distinctive quality, nor were they purchased for any such reason. Plaintiff does not plead that he was injured or damaged because in the 228 lambs delivered 52 were from the Maxwell ewes instead of from defendant's ewes. In fact, plaintiff does not plead, nor did he prove or attempt to prove, any damage or injury whatever. His sole contention is that he contracted to purchase the lambs from defendant's ewes and none other. It is true that in giving his testimony he said if he had known of the "substitution" he would not have accepted the Maxwell lambs, "because they were not worth the money." They were worth as much, pound for pound, as were defendant's

lambs. Maybe the market had declined. But the complaint was not drawn nor was the case tried on the ground that plaintiff had suffered any loss or damage in accepting the 52 lambs. In this action, he is in no better position than if he had pleaded mere chagrin.

Whether, in view of the terms of the contract, defendant would have been liable in damages had he failed to deliver 225 head is doubtful (*Barkemeyer Grain & Seed Co.* v. *Hannant,* 66 Mont. 120, 213 Pac. 208), but that he thought he was obligated to deliver that full number is clear. We think he did not intend to defraud plaintiff; what he did put no money in his pocket; did not give him any advantage. Now upon abstract principles, plaintiff was not obligated to purchase something for which he did not bargain. Conceding that he could have refused to accept the Maxwell sheep had he known the facts; conceding that defendant's delivering the sheep to plaintiff, with the 52 Maxwell sheep among the number, amounted to a false representation, did plaintiff have the right to ask the court to enforce a rescission of the contract without showing injury or damage? The answer must be in the negative.

This was an executed contract, and as was said in the case of *Atlantic Delaine Co.* v. *James,* 94 U. S. 207, 214, 24 L. Ed. 112, "cancelling an executed contract is an exertion of the most extraordinary power of a court of equity. The power ought not to be exercised except in a clear case, and never for an alleged fraud, unless the fraud be made clearly to appear; never for alleged false representations, unless their falsity is certainly proved, and unless the complainant has been deceived and injured by them."

This doctrine is equally applicable to an attempt to enforce the rescission of an executed contract. It is said in *Spreckels* v. *Gorrill,* supra, that "fraud which has produced, and will produce, no injury will not justify a rescission, nor support an action either for rescission or damages, is an established principle of law and equity." (*Darrow* v. *Houlihan,*

205 Cal. 771, 272 Pac. 1049; *Munson* v. *Fishburn*, 183 Cal. 206, ·190 Pac. 808.)

In order to maintain an action to rescind the contract or to ▮ enforce the rescission thereof, which amounts to the same thing, the complaining party "must have been misled to his prejudice or injury; for courts of equity do not, any more than courts of law, sit for the purpose of enforcing moral obligations or correcting unconscientious acts, which are followed by no loss or damage. It has been very justly remarked, that to support an action at law for a misrepresentation there must be a fraud committed by the defendant, and a damage resulting from such fraud to the plaintiff." (1 Story's Equity Jurisprudence, 14th ed., sec. 289.) "Courts of equity, like courts of law, however, do not concern themselves with wrongs which do not produce injury." *Stillwell* v. *Rankin*, 55 Mont. 130, 174 Pac. 186, 187, relied upon by defendant. Therein this court chose the rule that gives to the word "damage" its broad significance, which includes either pecuniary loss or the alteration of one's position to his prejudice.

Fraud without damage affords no ground for action. (*Holton* v. *Noble*, 83 Cal. 7, 23 Pac. 58; *Bomar* v. *Rosser*, 131 Ala. 215, 31 South. 430.)

Counsel for plaintiff has not cited an authority, nor have we found one, holding that a party may enforce the rescission of a contract where he has neither alleged nor proved that he suffered injury or prejudice. Having failed to show either, plaintiff is out of court. People are not at liberty to invoke the public force, except for the protection of substantial rights. "*De minimis non curat lex.*"

The judgment is affirmed.

ASSOCIATE JUSTICES GALEN, FORD and MATTHEWS concur.

MR. JUSTICE ANGSTMAN: I dissent. It seems to me that the words of the contract "all of 1929 lamb crop" together with the brand "M," when read in connection with the prelimi-

nary oral negotiations between the parties to explain the contract, would warrant a finding by the jury that what was meant was all of the 1929 lamb crop of the defendant. This being so, defendant fulfilled his contract by delivering his own full lamb crop regardless of the number, and plaintiff could not have been compelled to take the 52 head raised by another grower, even though of equal value and usefulness as those covered by his contract. (*Stanfield* v. *Arnwine*, 102 Or. 289, 202 Pac. 559; *Russell* v. *Camp*, 9 Ga. App. 691, 72 S. E. 60; *Rosenberg Bros. & Co.* v. *Beales*, 56 Cal. App. 212, 205 Pac. 18; *Mosby* v. *Smith*, 194 Mo. App. 20, 186 S. W. 49; *Houser* v. *Mathews*, 38 Ga. App. 404, 144 S. E. 43; *King* v. *City of Rochester*, 67 N. H. 310, 39 Atl. 256; *Shackelford* v. *Sloss Iron & Steel Co.*, 140 Ala. 329, 36 South. 1005; *Daggy* v. *Cox*, 19 Ind. 142.)

The rule is succinctly stated by the author of the exhaustive note in 35 L. R. A. (n. s.), on page 290, as follows: "A seller of animals described as being in his possession, to be delivered after they have been fattened, must deliver the specific animals in question. The buyer cannot be required to accept other animals purchased by the seller for the purpose of filling the contract, even though they are of the same grade and quality." If then, by fair dealing, the buyer may not be compelled to accept animals of the same grade and quality, when not covered by his contract, he ought not to be compelled to do so by concealment or fraud on the part of the seller.

Since the jury would have been warranted in finding that there was no contract with reference to the 52 head of sheep, decisions holding that an executed contract may not be rescinded without alleging and proving damages have no application here. It is worthy of note, also, that evidence went in without objection that the 52 Maxwell lambs were not worth the money. Of course, as to the lambs covered by the contract plaintiff was obligated to pay for them whether or not they were worth the money, but not so as to lambs not covered by the contract. There is no attempt made here to enforce the rescission of the contract (according to plaintiff's version)

in so far as the subject matter covered by it is concerned. The effort here is to rescind those acts done with reference to the 52 head of sheep not embraced in the contract. In other words, plaintiff is not seeking to enforce the rescission of a contract made by him, but is endeavoring to compel the defendant to restore to him that which he obtained from plaintiff under his warranty implied by law (sec. 7616, Rev. Codes 1921), that the 52 head of sheep were in truth covered by the contract when, in fact, they were not. He is seeking to be relieved from the supposed obligation to purchase that which he says he never agreed to purchase.

The effect of the majority opinion is to hold plaintiff to the obligations of a supposed contract, the terms of which the jury was warranted in finding he never assented to.

I think the court erred in taking the case from the jury.