BORUM *v.* SWIFT & COMPANY, and *vice versa.*

Where on the trial of an action for the breach of a written agreement for the sale and delivery of a given number of pounds of "ribs" of the value, at the agreed price, of more than fifty dollars, the evidence showed that the term "ribs" is ambiguous even to dealers in the general class of goods to which the alleged contract referred—there being several distinct kinds of "ribs" known to the trade,—and that the plaintiff understood, from a parol agreement with the defendant, that the "ribs" referred to in the writing were of a particular kind and of a given average weight, the writing did not sufficiently identify its subject-matter, nor contain the entire agreement, as required by the statute of frauds; and therefore the plaintiff could not recover.

Argued March 2,—Decided March 28, 1906.

Action for breach of contract. Before Judge Crisp. City court of Americus. March 6, 1905.

This was an action by D. M. Borum against Swift & Company, for the breach of an alleged contract for the sale and delivery of meat. The petition made the following allegations: On December 27, 1902, Swift & Company sent a telegram to Borum which was as follows: "Sorry can not confirm sale one hundred fifty

thousand pounds ribs eight seven-eighths c. a. f. best can do 8.95 c. a. f., January delivery ten points covering charge one half cent margin after January immediate acceptance wire." Borum immediately accepted this offer by telephone. He subsequently ordered Swift & Company to ship the meat, in accordance with the contract, in January, 1903, which Swift & Company declined to do. The market price of the meat, at the time and place of delivery, was 9.70 per pound, making a difference between the market value and the contract price of $1,100, for which plaintiff sought to recover. The defendant filed certain demurrers, which were overruled, and it excepted pendente lite. The defendant, among other things, pleaded the statute of frauds. When the case came on for trial, it was, by agreement, submitted to the trial judge for determination, without the intervention of a jury. The plaintiff introduced in evidence the telegram set out in his declaration, and testified that he accepted the offer therein made, over the telephone. He also testified as to the meaning of the telegram, according to mercantile custom and usage. He further testified, that he was a dealer in meat and had been engaged in that business about twenty years; that "there are different kinds of ribs known to the trade. I call smoked ribs smoked bacon. There are bacon ribbed sides and bacon clear sides, bacon under clears, etc. There is only one kind of dry salt ribs. It is owing to the cut that gives it a different meaning. There is one known as hard ribs, all the backbone is on one side of the side; rough ribs are the backbone split open right down the middle, half the backbone on one side and half on the other, and in short ribs it is the ribs with the side on it, without either part of the backbone. What I was dealing with him [the agent of Swift & Company] for was dry salt ribs, which was the backbone split open. It was not dry hard salt ribs that I was dealing for, but dry salt rough ribs. I understood that I had bought from him dry rough salt ribs, meaning salt meat. Of course it didn't come out of a cow; it was hog ribs, dry salt hog ribs, forty to forty-five pounds. I was not buying beef ribs, hog ribs but not cured. . . The weight was understood, an average of forty to forty-five pounds. I told him over the telephone what sort of meat, dry salt ribs with split backbone. I told him that, and every time on both deals; I didn't want anything else. That was in reply to the telegram, both of them." He further testified,

that he ordered 75,000 pounds shipped on January 23, 1903; that Swift & Company refused to make the shipment, and that the market value of dry salt rough ribs at the time and place of delivery was 9.70 cents per pound. The plaintiff also introduced in evidence the interrogatories of an agent of Swift & Company, sued out by the defendant, wherein the witness testified that he had general supervision over the provision branch houses of Swift & Company in December, 1902, and that on December 27, 1902, he "booked" D. M. Borum, on the order of Purcival, another agent of Swift & Company, and the one who sent the telegram to Borum, "one hundred and fifty thousands pounds dry salt hard short ribs at $8.95." The defendant introduced no evidence. The court rendered a judgment in favor of the defendant, to which the plaintiff excepted. The defendant filed a cross-bill of exceptions, in which it assigned error upon the exceptions pendente lite to the overruling of its demurrers.

*Shipp & Sheppard,* for plaintiff.

*Hardeman & Jones,* for defendant.

FISH, C. J. (After stating the facts.) The agreement for the breach of which the suit was brought was for the sale of merchandise of the value of more than fifty dollars; and, under the statute of frauds, to be enforceable, it had to be in writing. Civil Code, §2693(7). As no provision is made for oral evidence as to part of the terms omitted from the writing, it must, in general, set forth with sufficient certainty the essentials of the agreement. Of course a subject-matter is one of the essentials to a valid contract, and it is necessary that it be set forth with such certainty that it can be identified without resorting to oral evidence of the intention of the parties to supplement the terms of the writing as to what the subject-matter is. "Technical accuracy of description is not necessary; but as the entire contract must be proved by the writing, the description must be such as to specify the subject-matter, so that one familiar with such subject-matter can identify it, without further evidence of the intention of the parties direct." 2 Page on Contracts, §§696, 699, 700. That the subject-matter must be clearly identified in the writing see *Smith* v. *Jones,* 66 *Ga.* 338; *North* v. *Mendel,* 73 *Ga.* 404; *Douglass* v. *Bunn,* 110 *Ga.* 159. In *Stewart* v. *Cook,* 118 *Ga.* 541, the contract provided for the delivery of a certain number of "bales" of cotton, and the evidence

showed that the term "bales" was ambiguous and denoted more than one weight, and that the parties had a specified agreement as to what weight was meant. The writing was held to be insufficient to meet the requirements of the statute of frauds, as it affirmatively appeared that the contract was partly in writing and partly in parol, and the terms of the statute were not met. It seems to be uniformly held that an agreement within the statute of frauds can not be enforced unless the writing, or writings, identify with certainty the terms of sale and the subject-matter. 1 Reed on St. Frauds, §408; Browne on St. Frauds, §385, and cases cited by these authors. The term "ribs," used in the telegram, is manifestly ambiguous to the general reader, and, according to the testimony of the plaintiff himself, this term, unaccompanied by descriptive adjectives, is also ambiguous to those dealing in the general class of merchandise to which the alleged contract referred. He testified that there are several kinds of "ribs," which he enumerated, known to the trade. And in order to show the kind and character of meat to which the written offer of the defendant, which he testified he accepted over the telephone, referred, he had to resort to parol evidence, and to resort to it not for the purpose of showing that the term "ribs" had a definite meaning to dealers in meats, but for the purpose of showing what the particular subject-matter of the agreement was, not as expressed in the writing, but as expressed by the parties in parol. It appears, from his testimony, that the term "ribs" has no definite or specific meaning even among dealers in meats; and when Borum testifies that he was contracting for dry salt rough ribs, of an average weight of forty to forty-five pounds, it is clear that the telegram did not contain all the terms of the contract; which brings the case clearly within the ruling made in *Stewart* v. *Cook,* supra. In that case it was said, "the law requires that the contract of sale shall be in writing (Civil Code, §2693, par. 7); by which it of course means the entire contract, with all stipulations and provisions which have been assented to by the parties at the time of the sale. Where some of the terms are in writing and others in parol, the requirements of the statute are not met."

The plaintiff offered to introduce in evidence various letters and telegrams, which passed between the agent of the defendant who sent the telegram to Borum and the agent of the defendant having

general supervision of the defendant's provision branch houses, some of which letters and telegrams referred to the transaction in question, while others referred to previous negotiations between the parties, from which no agreement was claimed to have resulted. They were all excluded by the court, and their exclusion is complained of in the bill of exceptions. "All that is required [by the statute of frauds] is written evidence of the agreement, and therefore the memorandum may consist of letters written by the party to be charged, to his own agent, or to other third persons. The memorandum may even consist of entries made by the party to be charged, on his or his agent's books; and entries in the records of a corporation may prove a contract by it." Clark on Contracts, 83, and cit. While this is well settled, yet as there can be no contract without the assent of both parties, the party relying upon the memorandum to show the terms of the contract must show that he assented to those terms. It is not necessary to show that he assented in writing, but it is obviously necessary for him to show that he did assent. An examination of the letters and telegrams excluded by the court shows that where "ribs" are referred to at all, it is as "dry salt hard short ribs," which, according to the testimony of the plaintiff, were not the kind that he agreed to purchase from the defendant. So the excluded evidence, if it had been admitted, would not have tended to prove the contract as the plaintiff claimed it to be. For although the written evidence admitted and some of the written evidence excluded, when construed together, might have been sufficient to meet the requirements of the statute of frauds, if the proof had shown that the terms of a contract as expressed in these writings had been accepted or assented to by the plaintiff, yet as they would not have shown the contract to which the plaintiff testified and upon which he relied, the exclusion of this evidence was not harmful to the plaintiff. He could not recover because the defendant had failed to comply with an offer, the terms of which were deducible from the telegram admitted in evidence and some of the memoranda excluded from evidence, when, according to his testimony, he did not accept this offer, but a different one.

Our conclusion is that the telegram introduced in evidence did not contain the entire contract upon which the plaintiff relied, and therefore did not meet the requirements of the statute of frauds;

that an action would not lie for a breach of the contract, and that the court did not err in finding for the defendant.

*Judgment affirmed on main bill of exceptions; cross-bill dismissed. All the Justices concur.*