COMPANHIA DE NAVEGACAO LLOYD BRASILEIRO v. C. G. BLAKE CO., Inc.

Circuit Court of Appeals, Second Circuit. July 3, 1929.

No. 327.

Purrington & McConnell and Frank J. McConnell, all of New York City (James D. Brown, of New York City, on the brief), for plaintiff.

Lord, Day & Lord, of New York City, and Murray Seasongood, of Cincinnati, Ohio (Allen Evarts Foster, Parker McCollester,

and Franklin Grady, all of New York City, on the brief), for defendants.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). ■ This contract was not to deliver the amount of coal which six vessels of average capacity could lift. It was not a tonnage contract at all, but an undertaking to fill six steamers with coal and send them to Rio. The seller was not obliged, nor indeed was he permitted, to send more or less than six steamers; his offer to substitute schooners, for example, was not in performance, and indeed was not so suggested; it was a proposed modification. · Hence the capacity of the customary steamer was not an issue, unless we are to read the engagement as imposing on the seller the obligation of securing six steamers of· substantially equal burden, or possibly of an aggregate burden of 39,000. We think that the contract was simpler than that; it referred, as parties must always be assumed to refer, to the past transactions between them, certainly when these had been so. many as. here, and had extended over so long a time.

"Cargoes" meant cargoes as they had dealt in them, not as others had. This is, of course, a very common way to ascertain the meaning of language (Maydwell v. Rogers Lumber Co., 159· F. 930. [C. C. A. 9]), and it is especially persuasive when the earlier transactions are as ample as here. Had there been nothing of the sort, recourse might be necessary to custom, which would in that case supply the standard that history does in a case like the present. Nicoll v. Pittsvein Coal Co., 269 F. 968 (C. C. A. 2); Lamborn v. Blattner, 6 F.(2d) 435 (C. C. A. 5). It makes no difference that in many of the earlier shipments the contracts had specified the tonnage, together with the number of cargoes into which it was to be divided. We are to find out what the parties meant by the word, no matter whether they had been dealing in tons or not. This can be ascertained equally well, though the contract was by tonnage in one or more cargoes. It is proper to throw out the single cargo of 4,500 tons, because the contract in that case had been for two cargoes, of 5,000 and 8,000 tons, respectively, and the deficiency of one had been made up by an excess in the other. The facts being undisputed, it was for the court to construe the written words.

■ However, the earlier cargoes were not, and of necessity could not be, of one size; ships varied, and the parties had left it to the seller to choose. The meaning of the term was that it should be inside the limits within which the parties had theretofore dealt; that is, 5,000 and 9,000 tons. It does not, indeed, follow a priori that the choice between those limits lay with the seller. Crystal Paper Co. v. Robertson Co., 289 F. 15 (C. C. A. 6); Taggert v. Brimfield, 281 F. 830 (C. C. A. 3). That depends upon how the parties were situated and for whose benefit the option was left open. Wheeler v. Railroad Co., 115 U. S. 29, 37, 38, 5 S. Ct. 1061, 1160, 29 L. Ed. 341; American, etc., Co. v. Atlantic, etc., Co., 290 F. 632 (C. C. A. 3); Hunt v. Stimson, 23 F.(2d) 447 (C. C. A. 6); Standard Sugar Refinery v. Castano (C. C.) 43 F. 279.

In the case at bar·this could not have been the buyer, and indeed he makes no claim to six cargoes of 9,000 tons each. That would, under the circumstances, have imposed a plainly unreasonable burden on the seller; besides, in several instances in the past, when no tonnage had been specified, the choice of ships had been left to seller, whose duty it was to charter them. We construe the contract as binding the seller to ship six cargoes of at least 5,000 tons each, and giving. him an option to choose larger vessels up to the limit of 9,000.

■ Thus the question of custom did not·enter into the case at all; the judge chose the wrong issue to submit to the jury, and should have granted the seller's motion to strike out the sixth article of the complaint, which alleged it. This surplusage we can ignore; and the pleading thereupon stands as alleging a contract to deliver six steamers of 39,000 tons. The variance between the capacity alleged and that proved is as little important as that between the market value at Rio and that found by the jury. The seller complains that the buyer must recover secundum allegata, but that is a plea to which in modern times courts give little heed. The trial developed the facts, and the pleadings are only to prevent surprise. Indeed, even in straiter times there would here have been no change in the "cause of action," however that tortured phrase be read. We do not mean to suggest that we should have stood on the point, if there had been, but we need not take that up here.

■ Moreover, construed as we construe this contract, there was no issue for the jury, except the market value at Rio. The breach was wholly unexcused, as we shall show; the contract was for the court, and it was merely a question of the buyer's loss. We can, as it chances, tell as accurately what the jury found to be the market value at Rio as

though they had fixed it by special verdict. The judge told them to bring in a verdict for the seller, unless they found that there was a custom in the trade by which a cargo meant 6,500 tons. They must have so found, and from it the tonnage follows. This, divided into the gross amount awarded, fixes the market price at Rio as they found it. Therefore the case is proper for a remittitur. Van Boskerck v. Torbert, 184 F. 419, Ann. Cas. 1916E, 171 (C. C. A. 2). The seller has had his day in court on the only question open, and there was no error in the trial except this.

■ There remain the two defenses, the statute of frauds (Personal Property Law N. Y. [Consol. Laws, c. 41] § 85) and the excuse for nonperformance. The argument as to the first is that, as the writings used the word "cargoes" alone, the memorandum was not sufficient, because it was necessary to go outside to learn what was the quantity sold. In this we must distinguish, as Professor Williston points out, between matters not incorporated, which define the meaning by express agreement of the parties and by an independent standard of reference. Thus in Borum v. Swift & Co., 125 Ga. 198, 53 S. E. 608, and in Stewart & Son v. Cook, 118 Ga. 541, 45 S. E. 398, there were "ribs" or "bales" of various sizes, and nobody could tell what size was meant without recourse to the oral agreement which fixed it. Had the contract, as here, given the seller or the buyer the option to select any of these sizes, the objection would not have been good; the obligation would have been as broad as the writing. Now it is always permissible to define the terms used by any standard fixed by trade usage. Salmon Falls Mfg. Co. v. Goddard, 14 How. 446, 14 L. Ed. 493; New England, etc., Co. v. Standard Worsted Co., 165 Mass. 328, 331, 332, 43 N. E. 112, 52 Am. St. Rep. 516; Franklin Sugar Refining Co. v. Lipowicz, 247 N. Y. 465, 160 N. E. 916, 59 A. L. R. 1414; Heffron v. Armsby, 61 Mich. 505, 28 N. W. 672; Maurin v. Lyon, 69 Minn. 257, 72 N. W. 72, 65 Am. St. Rep. 568. To be sure, as we have construed the contract, the quantity was fixed, not by general usage, but by the past dealings of the parties; but this is equally permissible. Bibb v. Allen, 149 U. S. 481, 496, 13 S. Ct. 950, 37 L. Ed. 819; Haskell v. Tukesbury, 92 Me. 551, 43 A. 500, 69 Am. St. Rep. 529. The judge was right in overruling the defense.

■ There was no excuse for the seller's failure to perform. No doubt we have gone far since Paradine v. Jane, Aleyn, 26, but a promise still involves risks that the promisor may find burdensome or even impossible to meet. Day v. U. S., 245 U. S. 159, 38 S. Ct. 57, 62 L. Ed. 219. Its very purpose is to give assurance to the promisee against the hazards of the future. The promisor, by undertaking these pro tanto relieves the promisee, and it is in the end a question of how unexpected at the time was the event which prevented performance. Northern Pac. Co. v. Amer. Trading Co., 195 U. S. 439, 467, 25 S. Ct. 84, 49 L. Ed. 269. Had all steamers of requisite capacity been captured in war or destroyed in a hurricane, the excuse might serve; so far as appears, the only impossibility was that the seller had to bid unusually high freights. It does not appear that he could not have got any vessels in season, or could not have rechartered at an advance those already fixed. The mere fact that the contract had become unexpectedly burdensome is seldom, if ever, enough. The Harriman, 9 Wall. 161, 19 L. Ed. 629; Carnegie Steel Co. v. U. S., 240 U. S. 156, 165, 36 S. Ct. 342, 60 L. Ed. 576; Sun Printing Co. v. Moore, 183 U. S. 642, 22 S. Ct. 240, 46 L. Ed. 366. This has been applied to similar situations (Eppens v. Littlejohn, 164 N. Y. 187, 58 N. E. 19, 52 L. R. A. 811; Menz Lumber Co. v. E. J. McNeeley & Co., 58 Wash. 223, 108 P. 621, 28 L. R. A. [N. S.] 1007); though not always (Burt v. Garden City Sand Co., 237 Ill. 473, 86 N. E. 1055). At any rate, this was a risk which both parties well understood, and in the face of which the seller made his engagement. Even if he had found it quite impossible to fix any steamers, it would scarcely have served; but he did not, at least he did not prove more than that the contract had become burdensome. That was no excuse.

■ The other points raised on the seller's appeal do not require discussion. The buyer's appeal from the judge's refusal to allow interest must be denied. The case was one in which the jury might have allowed interest, but the buyer made no such request, and the record does not therefore raise the point. The court had no power to add interest to the verdict, and the request came too late.

The judgment is therefore reversed, unless the plaintiff within 10 days files a remittitur of nine thirty-ninths of the recovery, with interest. If it does, the judgment is affirmed for the reduced amount.