## PETTEE et al. v. CITY OF NASHUA.
### No. 2539.

Circuit Court of Appeals, First Circuit.
May 28, 1931.

ANDERSON, Circuit Judge, dissenting.

Arthur D. Hill, of Boston, Mass. (Faneuil Adams, of Boston, Mass., on the brief), for appellants on appeal.

Jonathan Piper, of Concord, N. H. (F. J. Sulloway and Demond, Woodworth, Sulloway & Rogers, all of Concord, N. H., and Robert Earley, City Sol., of Nashua, N. H., on the brief), for appellee.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

BINGHAM, Circuit Judge.

This is an action of debt on a contract of May 27, 1925, to recover two distinct sums for services rendered under the contract as per specification attached to the declaration. According to the specification one branch of the alleged claim is:

"For services in connection with plans, specifications, contracts, borings, and field super-vision for Main Street Bridge, Nashua, New Hampshire: 7½% of the cost of the undertaking:

| | |
|---|---|
| Cost-Amount paid Cunningham & Birdwood Construction Company | $61,020.00 |
| Plus amount paid to Blakesley Rollins Corp. | 157,520.00 |
| Cost | $218,520.00 |
| Total Commission—7½% of $218,520.00 | $16,389.00 |
| Credit by checks to date | 13,032.53 |
| | $3,356.47 |

The other branch is:

"For services in connection with the termination of contract with the Cunningham & Birdwood Construction Company by the Board of Public Works, consisting of conferences, estimates, survey of conditions, investigation, new plans, and specifications, obtaining new bids; awarding contract from December 24, 1925 to April 5, 1926 as specified under Article 37 of the Contract as additional engineering services:

| | |
|---|---|
| ...additional engineering services: | $1,150.00 |
| Expenses | 198.74 |
| | $1,348.74." |

The plea was a general denial. The case was tried before Judge Morris and a jury. At the close of the evidence the court directed a verdict for the defendant. Thereafter judgment was entered on the verdict and this appeal was taken.

The plaintiffs assign as error that the court erred in directing a verdict for the defendant as to either or both of the two sums claimed to be due them.

It appears that the contract relied on is contained in two letters. The plaintiffs' letter of proposal reads as follows:

"April 9, 1925.

"Hon. Eaton D. Sargent, Mayor, Nashua, N. H.

"Dear Sir: We will furnish plans, specifications, contract, additional borings, and field supervision for the new Main Street Bridge, Nashua, for 7½% of the cost of the undertaking, exclusive of land damages and engineering.

"The field supervision will include the services of Mr. Pettee or other member of the

firm during erection with visits to Nashua as frequently as required by the progress of the work.

"Field inspection will require the constant presence at the site of a competent inspector during the erection of the bridge. This work will be done at cost plus 25% and a similar charge will be made to cover the cost of any substantial changes that may be made in the plans involving new drawings.

"The percentage charge will include all work that we have done to date on the new bridge and also on the street widening.

"Payments will be due as follows: 4% when plans and specifications have been completed and ready for bidders, 1% when contract has been awarded, 1% when the first portion of the bridge has been completed and the final 1½% when the bridge has been completed. Bills for inspection will be rendered on the first of each month and will be due on the following tenth day of the month.

"Yours respectfully,
"J. R. Worcester & Co.
"EEP/D                    By E. E. P."

The defendant's acceptance was:

"City of Nashua, New Hampshire
"Engineering Department.

"George P. Winn, City Engineer
Fred L. Clark, Asst. Engineer.

"Nashua, N. H., May 27, 1925.
"Mr. E. A. Norwood, J. R. Worcester & Co., 79 Milk Street, Boston, Mass.

"Dear Mr. Norwood: The Board of Public Works at its recent meeting accepted your proposal relative to percentage and inspection on the Main Street Bridge job, in accordance with Mr. Pettee's letter to Eaton D. Sargent, Mayor, dated April 9, 1925.

"Very truly yours,
"G. P. Winn, City Engineer."

At the time the contract embodied in these letters was made, no contract for the construction of the bridge had been let. Later such a contract was awarded to the Cunningham & Birdwood Construction Company, the price being fixed at $173,767. This company rendered service under its contract for which it was paid $61,020, and then defaulted. It had, however, given a surety bond to the city for the fulfillment of its undertaking. Later a contract for the completion of the bridge was made with another contractor, the Rollins Company, at a cost of $157,500, or $44,743 more than the unpaid balance of $112,747 on the original contract price. Whether the contract with the Rol-

lins Company was made with the bonding company or with the city does not appear. The bonding company had bound itself to see that the original contract was carried out. In fulfillment of its obligation it no doubt employed the Rollins Company to do so. The city was not a necessary party to that contract. It does, however, appear that on the completion of the bridge the city paid $112,747, the balance due under its contract with the Cunningham & Birdwood Construction Company, and that the bonding company paid the excess cost of $44,743.

The plaintiffs have received compensation from the defendant city at the rate of 7½ per cent. on $173,767, the latter sum being the full amount which the city paid for building the bridge. What the plaintiffs seek to recover under their first claim, as above set out, is 7½ per cent. on the excess cost of $44,743, which the bonding company paid in fulfillment of its obligation under its bond —that the Cunningham & Birdwood Construction Company would complete the bridge at the price of $173,767.

The other item of the claim, made up of services amounting to $1,150 and expenses of $198.74, was claimed at the trial to be due the plaintiffs under the provisions of the contract with the city as embraced in the letters of April 9 and May 27, 1925. But at the hearing before us on appeal the further and apparently contradictory claim was made that the sum of $1,348.74 is due them for extra work performed outside the contract embodied in these letters.

As to this item of $1,348.74, the court below, in construing the third paragraph in the contract as contained in the letter of April 9, held that, according to the evidence, the field inspection had been paid for; and as to the last clause in that paragraph, providing for a cost-plus 25 per cent. charge "to cover the cost of any substantial changes that may be made in the plans involving new drawings," he held that nothing was due under this clause, as (1) the evidence disclosed that no substantial changes were made in the plans involving new drawings, and (2) that the evidence did not disclose "the cost to the plaintiffs of any extra work that they did upon which a percentage could be computed," under this provision.

As to the $1,348.74, we are satisfied that there was no evidence from which this item could be found to be due for services rendered under any provision of the contract, and particularly under the last provision of the third paragraph thereof, for the evidence

disclosed that no substantial changes were made in the plans involving new drawings. The work was completed under the old plans and drawings. There were no new plans. There was simply a red line drawn on the old plans showing where the first contractor ended his work and where the new one was to begin.

Furthermore, if this work was rendered under the provisions of the contract and particularly under the last provision of the third paragraph of the contract, the direction of a verdict was proper, for there was no evidence from which the jury could find what the reasonable cost of the work was to the plaintiffs as a basis for recovery under the contract. In these respects we agree with the rulings of the District Court.

We are also of the opinion that, if the plaintiffs had included in their declaration a count in quantum meruit, and the work had been done outside the contract, there was no evidence from which the jury could find the value of such work, or that the expenses charged were actually incurred. But the declaration contained no count in quantum meruit; the case was not tried on that basis and no amendment to that effect was requested. Had the evidence been such as to warrant a finding in the plaintiffs' favor on this branch of the case, we might allow an amendment, but it is not, and to allow an amendment at this time would be to grant a new trial, not on account of any error of the District Court, but because of the failure of the plaintiffs to prove a case.

As to the item of $3,356.47, as to which the District Court directed a verdict for the defendant, we think there was no error in the ruling of the court below. By the first paragraph of the contract the plaintiffs agreed to "Furnish plans, specifications, contract, additional borings, and field supervision for the new Main Street Bridge, Nashua, for 7½ per cent of the cost of the undertaking, exclusive of land damages and engineering," and the plaintiffs' right to recover the amount of $3,356.47 depends upon the construction of this provision of the contract read in the light of the other provisions of the contract and the circumstances under which the contract was made.

As to this item, the court below was of the opinion that the expression "cost of the undertaking," as used in the contract, meant the cost of building the bridge to the city. The plaintiffs were contracting with the city. By the cost of the undertaking they did not mean the cost to the contractor or any other third party, but the cost to the city. Had the cost to the contractor been less than what the city paid, it is not likely that the plaintiffs would claim that their percentage was based on such cost; and it is no more reasonable to suppose that the language was intended to cover the cost to the contractor, or to the contractor and his surety, if that cost exceeded the cost to the city.

The judgment of the District Court is affirmed, with costs in this court to the appellee.

ANDERSON, Circuit Judge (dissenting).

It seems plain to me that the court below erred in ordering a verdict for the defendant. The phrase "cost of the undertaking" in the written contract cannot, as matter of law, fairly be construed, under the circumstances disclosed in this record, to mean the hypothetical cost to Nashua. The plaintiffs were employed to make plans and superintend the building of a new bridge; its actual cost was $218,520; there is nothing to show that this was an excessive cost; the fair inference is that it was not.

The bridge might have been built by the city under one or under several contracts; if under several, their aggregate would have been the "cost of the undertaking" on which the engineer's percentage should be reckoned. Whether any or all of such contractors made profits or losses, would have made no difference in the rights now in question. Their rights were measured by the agreed percentage on the sum of all the contracts made by the city, whatever the actual cost of the job to the contractors. "Cost of the undertaking" means "contract cost of the undertaking"—whatever the number of contractors with the city, and whether more than one was adopted—by choice, or under compulsion, as in this case.

The facts that the city wisely took a bond from the first contractor to secure the construction of the bridge at a price of only $173,767, that the first contractor failed to complete the job, and that therefore the second partial contract was completed at the expense of the surety company, are, in my view, irrelevant. The fair inference is that the first contractor's failure to complete was due to a demonstrated inadequacy of the agreed contract price. Moreover, the city was a necessary party to the second contract.

The exact terms of the surety company's obligation do not appear. There is no warrant in the record for the statement in the majority opinion that that obligation bound

the surety company * * * "to see that the original contract was carried out. In fulfillment of its obligation it no doubt employed the Rollins Company to do so. The city was not a necessary party to that contract." I can conceive of no grounds on which the Rollins Company could enter upon city property and complete that bridge except a contract with the city. The record simply says that, after the first contractor defaulted, "the contract was given * * * to * * * the Rollins Corporation." This fairly implies given by the city, and nothing else.

At most, the statements in the majority opinion are only guesswork; but cases should not be taken from the jury and verdicts ordered on guesswork. The actual cost of the bridge, under one or more contracts made with the city, was what the plaintiffs had in mind in making their accepted offer, and what the city fairly ought to have understood by the phrase "cost of the undertaking."

It follows that this phrase should, as matter of law, have been construed as the plaintiffs construed it; or, at least, its meaning should have been submitted to the jury under the familiar doctrine stated by Judge Hand in Companhia De Navegacao Lloyd Brasileiro Co. v. C. G. Blake Co. (C. C. A.) 34 F.(2d) 616. See, also, Bank of New Zealand v. Simpson, [1900] A. C. 182. 2 Williston on Contracts, § 616, and cases cited. 13 C. J. page 532, and cases cited.

The other claim (for extras) it seems to me (with a possibly needed amendment of the pleadings) should also have been left to the jury. It is a fair—probably a necessary —inference that the default of the first contractor put extra work upon the superintending engineers, not contemplated by the original contract. While the evidence as to the amount of extra labor and expense was rather meager, it was not so plainly defective as to warrant the court in ordering a verdict for the defendant.