**VERNON LUMBER CORPORATION v. HARCEN CONST. CO.**

Civil Action No. 4781.

District Court, E. D. New York.

April 19, 1945.

Max Ornstein, of New York City, for plaintiff.

Gresser & Walker, of New York City (Nathan Walker, of New York City, of counsel), for defendant.

MOSCOWITZ, District Judge.

■ Defendant has moved to strike from the plaintiff's reply to its counterclaim, as insufficient, the first, second and third affirmative defenses contained therein. Plaintiff asserts the objection that the relief sought is in the nature of a demurrer, which has been expressly abolished by Rule 7(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and that there is no authority to strike part of a pleading as insufficient. On the contrary, there is extensive and undoubted authority to the effect that a motion to strike an affirmative defense in a reply as legally insufficient is proper under Rule 12 (b) 6. Moore's Federal Practice, Vol. I, Supplement, page 659, and cases cited.

The action is to recover the amount unpaid for lumber delivered by plaintiff to defendant under a written contract, which defendant substantially admits is due. The counterclaim seeks damages arising from the failure of plaintiff to deliver all of the lumber called for by the contract. Nondelivery is conceded by plaintiff; the excuses which are offered in exoneration are the subject matter of this motion.

Plaintiff claims that it placed an order with the Sitterding-Carneal-Davis Company of Richmond, Virginia, which, if it had been fulfilled, would have enabled plaintiff to complete its contract with defendant. It is further alleged that the Sitterding mill was unable to supply plaintiff because the United States Navy, under a higher priority rating, requisitioned and took the entire output of the Sitterding mill.

The first affirmative defense alleges that duly promulgated rules and regulations of the War Production Board make it mandatory that any mill must accept and supply orders with the highest priority ratings first and that it is compulsory that orders with the highest priorities shall be given preference and completed before any of the mill's output may be applied to an order with a lower priority rating. This defense rests upon War Production Board Regulation No. 944.13, which states in part:

"No person shall be held liable for damages or penalties for any default under any contract or order which shall result directly or indirectly from compliance with any rule, regulation or order of the War Production Board. * * *"

Plaintiff claims that the absorption of its supplier's output by the Navy excuses plaintiff from further performance of its contract with defendant solely by virtue of Regulation 944.13.

■ The Regulation obviously does not apply to plaintiff. The exoneration provided is to a contracting party whose performance is interfered with by a requirement that its output, previously destined for delivery on its contract, shall go to another customer with a higher priority. This defense might well be available to the Sitterding mill in an action against it by plaintiff (such an action has been commenced), since its output was diverted by a Regulation of the War Production Board, but it is not available to plaintiff here. The cases cited by plaintiff in support of its first defense in reality are authority for the defendant's position, since they are examples of situations in which performance by the primary contracting supplier was prevented by war regulations or necessity, i. e., Martin Ross Mfg. Corporation v. Ulius, 181 Misc. 995, 48 N.Y.S. 2d 756; Mawhinney v. Millbrook Woolen Mills Inc., 231 N.Y. 290, 132 N.E. 93, 15 A.L.R. 1506.

■ It also appears that the Regulation under which plaintiff seeks to be excused provides by its own terms (No. 944.7) that an order with a lower rating shall nevertheless be accorded priority over an order with a higher rating if the former calls for delivery at an earlier date and it is possible that both may be completed in time. No allegation is made to show that this provision does not negative the excuse offered.

■ To the extent that the first affirmative defense may be said to rest upon ordinary frustration of contract principles rather than upon the Regulation, there is no allegation of any attempt whatever hav-

ing been made by plaintiff to procure the lumber elsewhere. Thus the disposition of this defense would be the same as of the second defense. Town of North Hempstead v. Public Service Corporation of Long Island, 107 Misc. 19, 176 N.Y.S. 621, affirmed 192 App.Div. 924, 182 N.Y.S. 954.

■ ■ The second affirmative defense consists of two main parts. Firstly, it is alleged that the parties agreed that plaintiff would be relieved from performance of its contract with defendant if the Sitterding mill failed in its deliveries to plaintiff or if plaintiff was unable to procure the lumber from its regular sources. A pre-trial conference has been held by the Court in this case and a great saving of time has once more been effected, evidencing the advantages of this new federal procedure. Facts and admissions adduced at the pre-trial may properly be considered in the determination of this motion. Upon the pre-trial it developed that these alleged agreements were oral and it is thus obvious that they cannot alter or vary the written contract entered into. Having been prior to the written contract, the alleged oral agreements have been merged and no longer have any legal efficacy. Union Mutual Life Ins. Co. v. Mowry, 96 U.S. 544, 24 L.Ed. 674.

■ Plaintiff argues that the specific agreements were in fact embodied in the written contract in its provision that the order was accepted "subject to conditions beyond control" and urges that plaintiff should be permitted to show by parole evidence that this is what the parties intended by the use of this phrase. It is a settled principle that when parties to a written contract employ language in the writing which is ambiguous and cannot be properly construed without ascertaining what the parties had in mind when they chose the word, their intention may be shown by parole evidence. But "conditions beyond control" is not an ambiguous term which will require resort to parole evidence to explain it. While its meaning might be doubtful if this were the first time it had been employed in a contract, it has by repeated use assumed an indisputable connotation which it will be presumed the parties intended in adopting it just as would be so with any ordinary and well-understood word or series of words. "Conditions beyond control" refers to an unforeseeable act of God or other extraordinary cause which could not reasonably be anticipated by the parties. It would cover an unforeseeable change in the law which made performance impossible. But it does not refer to difficulties in performance which have developed since the making of the contract but which could have been anticipated. The Regulation of the War Production Board under which plaintiff seeks to be relieved of its duty to deliver the lumber was in existence when the contract was made and the withdrawal of plaintiff's contemplated supply by operation of the Regulation is a development which it is presumed plaintiff anticipated or could have anticipated. Crown Embroidery Works v. Gordon, 190 App.Div. 472, 180 N.Y.S. 158; Balfour Guthrie & Co. v. Portland & Asiatic S. S. Co., D. C. Or.1909, 167 F. 1010; Companhia De Navegacao Lloyd Brasileiro v. C. G. Blake Co., 2 Cir.1929, 34 F.2d 616; Cannistraci v. James Chieves & Co., App.T.1917, 165 N. Y.S. 933.

■ Secondly, exoneration is sought under the provision alone of the contract which states that the order is accepted "subject to conditions beyond control," relying on frustration without reference to the alleged oral agreements. After setting forth the development which prevented Sitterding from making delivery to plaintiff, it is alleged that "the plaintiff used diligent efforts, and at a large expense to it, sought to procure the lumber specified in the counterclaim from its usual and regular channels as well as elsewhere. * * *" This allegation is not sufficient to excuse plaintiff from performance of its contract with defendant.

If conditions beyond the control of plaintiff have made it *impossible* for plaintiff to procure the required lumber, performance of the contract has been frustrated and plaintiff would not be liable for its default. If rules and regulations of the War Production Board made it *impossible* for plaintiff to procure the lumber, the rules and regulations would be a bona fide excuse. But the reply does not allege "impossibility" and, in failing to do so, is insufficient as a defense and must be stricken.

■ This is not quibbling over technicalities and the Court is mindful of the liberality by which federal pleading need state only "a claim upon which relief can be granted." Dioguardi v. Durning, 2 Cir. 1944, 139 F.2d 774, 775. Here the very

substance of the defense is the development of a condition "beyond the control" of plaintiff. The withdrawal of its contemplated supply is not placing beyond plaintiff's control its obligation to furnish lumber to defendant. The contract was not one under which the continued availability of the Sitterding supply was an implied condition of performance by plaintiff. Plaintiff was obliged to furnish lumber of prescribed specifications to defendant and could obtain it wherever it could be procured. There is no suggestion in the contract that plaintiff was to furnish lumber only from the Sitterding mill, which is corroborated by plaintiff's own allegation in Paragraph 16 of its reply that it did in fact procure a large amount of lumber elsewhere after the Sitterding mill had terminated its supply to plaintiff, which was delivered to defendant and accepted by it. Thus, all the decisions cited by plaintiff concerning the explanation by parole evidence of an implied condition of continued existence of subject matter have no application. Here such a condition would be inconsistent with the express contract, which makes no mention of a particular source.

 The term "impossible" does not mean an absolute inability; if it did, impossibility of performance could be negatived merely by showing that the required lumber was available at some backwoods source not known to any one but the inhabitants of the surrounding area. "Impossible" must be given a reasonable and practical construction (see 20 Words & Phrases, Perm.Ed., "Impossible"), but it is not satisfied by the allegation employed herein that plaintiff sought to procure the lumber "from its usual and regular channels as well as elsewhere." James Pels Co. Inc. v. Republic Chemical Corporation, Sup., 31 N.Y.S.2d 857; Cannistraci v. Chieves, supra. Under the contract as it is presently written, plaintiff is under obligation to furnish the lumber if it can be obtained. To be excused from this obligation, plaintiff must allege "impossibility" of obtaining that lumber. Only then would the defense have merit. Companhia v. Blake, supra; Jacksonville, M. P. Ry. & Nav. Co. v. Hooper, 160 U.S. 514, 527, 16 S.Ct. 379, 40 L.Ed. 515; The Harriman, 9 Wall. 161, 172, 19 L.Ed. 629. The burden of proving the allegation—which is not being weighed by this Court—would require plaintiff to show that it made every attempt which would be considered reasonable in the trade to find an alternative source. Merely trying its regular and usual channels would not suffice.

The third affirmative defense reasserts the alleged oral agreements heretofore referred to and seeks reformation of the written contract to incorporate them, stating that they were omitted by the mutual mistakes of the parties or by the mistake of one and fraud of the other. The allegation on its face is sufficient and must stand. This was admitted by defendant at the pre-trial. It will probably be necessary for the trial court first to determine whether the action to be litigated before the jury shall be based upon the present contract or upon one which has been reformed as sought.

The motion to strike the first and second affirmative defenses in plaintiff's reply is granted, with leave to amend the reply in accordance with this opinion. The motion to strike the third affirmative defense is denied.

Settle order on notice.